1   Scott H. Frewing (SBN 191311)
    Robert C. Hammill (SBN 298689)
2   **Baker & McKenzie LLP**
    660 Hansen Way
3   Palo Alto, CA  94304-1044
    Telephone: +1 650 856 2400
4   Facsimile: +1 650 856 9299
    scott.frewing@bakermckenzie.com
5   robert.hammill@bakermckenzie.com

6   Attorneys for Respondent
    Lawrence Y. Lui

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,              Case No.  3:16-cv-00969-JST

12              Petitioner,                AMENDED MEMORANDUM OF
                                           POINTS AND AUTHORITIES IN
13        v.                               SUPPORT OF LAWRENCE Y. LUI'S
                                           OPPOSITION TO UNITED STATES
14  LAWRENCE Y. LUI,                       PETITION TO ENFORCE THE IRS
                                           SUMMONSES
15              Respondent.
                                           DATE:   March 16, 2017
16                                         TIME:   2:00 p.m.
                                           DEPT.:  Courtroom 9 - 19th Floor
17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

# **TABLE OF CONTENTS**

**Page(s)**

I.    **INTRODUCTION** ................................................................................................ 1

II.   **STATEMENT OF FACTS** ............................................................................... 2

      A.    The Dr. Lui 2002 Trust ............................................................................... 2

      B.    The IRS Audit ............................................................................................. 4

      C.    The July 8, 2014 Testimonial Summons ..................................................... 6

      D.    Dr. Lui's Instructions to Lui on July 26, 2014 ............................................ 7

      E.    The July 29,  2015 IRS Document Summons ............................................. 8

      F.    Lui's Efforts to Obtain Documents Responsive to the Document Summons ............. 9

III.  **ARGUMENT** ................................................................................................ 10

      A.    The Document Summons Is Unenforceable for Documents Lui Already Produced to the IRS ................................................................................. 12

            1.    Lui Produced Substantial Documents to the IRS During the Audit ............. 12

            2.    The Government Cannot Make its Prima Facie Case and Enforce an "Unnecessary" Summons for the Documents Lui Already Produced .......... 12

      B.    Enforcing the Document Summons Would Be An Abuse of Process Because Lui Does Not Possess or Control the Additional Documents the IRS Seeks ........... 13

            1.    Lui Properly Raised Non-Possession and Lack of Control In This Initial Enforcement Proceeding ....................................................... 14

            2.    Lui Has Introduced Substantial Evidence of Lack of Possession or Control ................................................................................... 14

            3.    The Government Has Not Met Its Burden of Persuasion ............................ 17

            4.    Lui Did Not Cause the Documents to Not Be in His Possession or Control After the IRS Served the Document Summons ................................. 19

            5.    Lui Engaged in Reasonable Efforts to Obtain the Requested Documents ............................................................................... 20

      C.    The Testimonial Summons Is Unenforceable Because Lui Properly Asserted His Fifth Amendment Rights ......................................................... 21

            1.    The IRS Interview Questions Confronted Lui with Real, Not Trifling or Imaginary Hazards of Self-Incrimination ....................................... 21

            2.    Facts Existed to Reasonably Cause Lui and His Counsel to Believe that the IRS Would Commence a Criminal Proceeding ......................... 22

      D.    Enforcing the Testimonial Summons for Certain Additional Questions Would Be An Abuse of Process Because Lui Properly Asserted Other Privileges .............. 26

      E.    Additional Arguments ................................................................................. 27

            1.    Verification of the Complaint Was Inadequate ............................................. 27

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

2.  Documents Related to WG, Netfinity and Jatur Are Not Relevant ............... 28

3.  IRS Section 982 Letter Makes Documents Irrelevant for Document Summons ................................................................................................. 28

4.  Abuse of Process and Bad Faith .................................................. 28

IV.  **CONCLUSION** ................................................................................ 28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Federal Deposit Ins. Corp. v. Sovereign State Capital, Inc.*,
557 F.2d 683 (9th Cir.1977) ...........................................................................................24

*United States v. Helina*,
549 F.2d 713 (9th Cir.1977) ...........................................................................................24

*United States v. Tsui*,
646 F.2d 365 (9th Cir.1981), cert. denied, 455 U.S. 991, 102 S.Ct. 1617, 71
L.Ed.2d 852 (1982) ........................................................................................................24

*Cheek v. United States*,
498 U.S. 192 (1991) ........................................................................................................22

*Couch v. United States*,
409 U.S. 322 (1973)........................................................................................................13

*Countryside Limited Partnership v. Commissioner of Internal Revenue*,
132 T.C. 347 (2009)........................................................................................................27

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)........................................................................................................20

*Fortney v. United States*,
59 F.3d 117 (9th Cir. 1995) ...........................................................................................10

*Fraser v. Goodale*,
342 F.3d 1032,(9th Cir. 2003) .......................................................................................14

*Hickman v. Taylor*,
329 U.S. 495 (1947)........................................................................................................26

*Hoffman v. United States*,
341 U.S. 479 (1951)........................................................................................................23

*Kastigar v. United States*,
406 U.S. 441 (1972)........................................................................................................11

*Sansone v. United States*,
380 U.S. 343 (1965)........................................................................................................22

*United States v. Adlman*,
134 F.3d 1194 (2d Cir. 1998)........................................................................................26

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

*United States v. Asay*,
614 F.2d 655 (9th Cir. 1980) .................................................................11, 13, 18, 19

*United States v. Clarke*,
134 S. Ct. 2361 (2014)................................................................................. *passim*

*United States v. Dahlstrom*,
713 F.2d 1423 (9th Cir. 1983), cert. den. 406 U.S. 980 (1984)...................................20

*United States v. Darwin Constr. Co.*,
873 F.2d 750 (4th Cir. 1989) .................................................................................19

*United States v. Drollinger*,
80 F.3d 389 (9th Cir.1996) .............................................................6, 19, 21, 23

*United States v. Gertner*,
65 F.3d 963 (1st Cir. 1995) ..................................................................................17

*United States v. Goldman*,
637 F.2d 664 (9th Cir. 1980) .......................................................................... *passim*

*United States v. International Union of Petroleum & Indus. Workers*,
870 F.2d 1450 (9th Cir. 1989) .............................................................................18

*United States v. John Doe*,
465 U.S. 605 (1984).............................................................................................21

*United States v. Kis*,
658 F.2d 526 (7th Cir. 1981) ...............................................................................13

*United States v. Lamotte*,
No. 15-mc-93017-MGM, 2016 U.S. Dist. LEXIS 61704 (D. Mass. Apr. 19, 2016) ...................21

*United States v. Neff*,
615 F.2d 1235 (9th Cir. 1980) .............................................................................21

*United States v. Powell*,
379 U.S. 48 (1964).........................................................................10, 11, 12, 27, 28

*United States v. Rendahl*,
746 F.2d 553 (9th Cir.1984) .........................................................................21, 24

*United States v. Rizzo*,
539 F.2d 458 (5th Cir. 1976) ...............................................................................20

*United States v. Rylander*,
460 U.S. 752 (1983).................................................................................... *passim*

*United States v. Sanmina*,
No 5:15-cv-00092-PSG. (N.D. Cal., May 20, 2015) .................................................27

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

*United States v. Sorrells*,
  877 F.2d 346 (5th Cir. 1989) ..................................................................................19

*United States v. Stuckey*,
  646 F.2d 1369 (9th Cir. 1981) ............................................................................11, 13

*United States v. Toyota Motor Corp.*,
  569 F.Supp. 1158 (C.D. Cal. 1983) ..................................................................13, 17

*United States v. Troescher*,
  99 F.3d 933 (9th Cir. 1996) ..............................................................................23, 25

*United States v. Turk*,
  722 F.2d 1439 (9th Cir.1983), cert. denied, 469 U.S. 818, 105 S.Ct. 86, 83
  L.Ed.2d 33 (1984) ..............................................................................................24

*United States v. Zolin*,
  491 U.S. 554 (1989) ..........................................................................................26

*Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999) .......25

**Constitutional Provisions**

U.S. Const. amend V ............................................................................... *passim*

**Statutes**

26 U.S.C. § 501(c)(3)..........................................................................................9

26 U.S.C. § 641(b)..............................................................................................25

26 U.S.C. § 982...........................................................................................9, 27, 28

26 U.S.C. §§ 1471–1474.....................................................................................25

26 U.S.C. § 6038D..............................................................................................25

26 U.S.C. § 6104.................................................................................................9

26 U.S.C. § 6677(b)............................................................................................25

26 U.S.C. § 7201.................................................................................................22

26 U.S.C. § 7203.................................................................................................25

26 U.S.C. § 7206.................................................................................................25

26 U.S.C. § 7525...........................................................................................26, 27

26 U.S.C. § 7605(b)............................................................................................12

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

26 U.S.C. § 7701(a)(30) .................................................................................................2, 3

31 U.S.C. § 5322 ............................................................................................................22

**Federal Rules**

Fed. R. Civ. P. 44.1 ........................................................................................................14

Fed. R. Civ. P. 56(c)(4) ............................................................................................14, 27

Fed. R. Civ. P. 81 .....................................................................................................14, 27

Fed. R. Evid. 301 ....................................................................................................17, 18

Fed. R. Evid. 803(3), 803(5), 803(6), 803(8), 803(15) ................................................14

**Other Authorities**

31 CFR § 10.3(a)-(b) ......................................................................................................26

Hong Kong New Companies Ordinance, Section 374
        http://www.cr.gov.hk/en/companies_ordinance ................................................4, 5

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

## I.    INTRODUCTION

The United States seeks to enforce two Internal Revenue Service ("IRS") summonses.  One summons seeks documents, many of which are, and were, wholly owned and controlled by non-U.S. persons located outside the United States (the "Document Summons").  The other seeks testimony protected by the Fifth Amendment of the United States Constitution (the "Testimonial Summons").

The recipient of the summonses, Mr. Lawrence Y. Lui ("Lui"), has complied with both summonses.  Lui produced to the IRS several thousand pages of documents responsive to the Document Summons.  He also appeared for an IRS interview pursuant to the Testimonial Summons and responded to all IRS questions that did not implicate his Fifth Amendment privilege.

In light of Lui's compliance, enforcing either the Document Summons or the Testimonial Summons would be an abuse of process.  With regard to the Document Summons, the only documents the IRS continues to seek are related to two corporations, Wealth Grand Limited, a Hong Kong company ("WG"), and Netfinity Assets Corporation, a British Virgin Islands company ("Netfinity").   Lui has demonstrated that, as of July 29, 2015, the service date of the Document Summons, he did not possess or control the WG or Netfinity documents.  Lui properly raised non-possession in this enforcement proceeding, produced credible evidence that his non-U.S. siblings, not Lui, controlled the Netfinity and WG entities, and their documents more than one year prior to the IRS serving the Document Summons.

With regard to the Testimonial Summons, enforcement would be an abuse of process because Lui is entitled to refuse to testify against himself, when, as here, the IRS seeks disclosures which Lui and his counsel reasonably believe could be used against him in a criminal prosecution.   The Court was previously unable to do the required question-by-question analysis because during the December 15, 2016 hearing Lui's former counsel mistakenly stated that the transcript of IRS interview  was not in the record.  The transcript is indeed in the record as ECF No. 11-1, having been filed on April 27, 2016 by Petitioner's Counsel, who also did not correct the error made by Lui's prior counsel during the December 15, 2016 hearing.

During the December 15, 2016 hearing, and in its January 11, 2017 order, this Court provided Lui an opportunity to amend his original Memorandum of Points and Authorities In

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Support of Lawrence Y. Lui's Opposition to United States Petition to Enforce the IRS Summonses ("Original Memorandum"). In this Amended Memorandum, Lui and new undersigned counsel have streamlined and clarified Lui's prior arguments, and provide specific ECF citation to the existing documents in the record that (i) show that Lui complied with the summonses, (ii) demonstrate Lui does not possess or control the additional documents the IRS seeks, and (iii) explain why the questions to which Lui objects implicate his Fifth Amendment rights.

## II.    STATEMENT OF FACTS

Lui is one of five adult children of Dr. Lui Che Woo, a Hong Kong businessman and global philanthropist ("Dr. Lui"). Lui is a U.S. person because he is a U.S. citizen and resides in the United States. *See* 26 U.S.C. § 7701(a)(30). Dr. Lui and Lui's four siblings are not U.S. persons because they are not U.S. residents, green card holders, or U.S. citizens. *Id.*

### A.    The Dr. Lui 2002 Trust

On or about January 21, 2002, Dr. Lui established an irrevocable trust by a handwritten letter, in Chinese, to Lui directing Lui to hold shares in trust for Lui and his brothers and sisters. *See* ECF No. 24-2, pp. 17-18 (2002 letter from Dr. Lui and English translation). The letter, translated from Chinese, stated, in its entirety:

> Yiu Nam son,
>
> With regard to your discussion relating to acquisition of shares of Galaxy, I promise to provide to you or [your] company HK$100 million, solely to be used for the purchase of Galaxy shares.
>
> If in the future the Shares can successfully be floated, you must per my notification to you allocate the Shares amongst yourself and other elder and younger brothers and elder and younger sisters.
>
> It is not appropriate at this moment to inform any other person(s) or any of the elder or younger brothers or elder or younger sisters of this particular matter, this is important.
>
> Father

Dr. Lui's 2002 letter to Lui created a trust under Hong Kong law (the "2002 Trust"). *See*

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

ECF No. 22-2, pp. 3-7 (letter from Baker & McKenzie, dated June 16, 2016, analyzing the validity of the 2002 Trust under Hong Kong law).  Dr. Lui's letter made Lui a Trustee.  *Id.*  The potential beneficiaries of the 2002 Trust were Dr. Lui's five children, including Lui.  *Id.*  Lui was the only trust beneficiary that is a U.S. person.  *Id.*

Dr. Lui, as the grantor of the 2002 Trust, expressly reserved the sole right to determine the time of distribution and the allocation per person of the 2002 Trust assets.  *See* ECF No. 24-2, pp. 14-16 (Deacons letter analyzing 2002 Trust); ECF No. 24-2, pp. 17-18 (2002 letter from Dr. Lui and English translation).

During its existence, the 2002 Trust directly held shares through the Trustee of only two companies, Netfinity and WG.  *See* ECF No. 24-2, p. 154 (letter from Francis Lui stating that upon distribution of assets from the trusts he and Lui's other siblings received shares of Netfinity and WG); s*ee also* ECF No. 24-2, p. 73, 77 (declarations of Alan Wong Hoi Ping, a director of Netfinity, stating that Lui was never a beneficial owner of Netfinity shares, held Netfinity shares solely in his capacity as Trustee for the 2002 Trust, and does not have possession, custody, or control of Netfinity documents); ECF No. 24-2, p. 75, 79 (declarations of Ng Kok Hai, a director of Netfinity and WG, stating Lui held Netfinity and WG shares solely in his capacity as Trustee for the 2002 Trust, and does not have possession, custody, or control of Netfinity documents).

After it was incorporated, Netfinity acquired shares of Galaxy Entertainment Group, Limited ("Galaxy").  ECF No. 22-2, pp. 12-13 (letter from Dr. Lui directing that the 2002 Trust acquire Galaxy shares); ECF No. 24-2, pp. 14-16 (Deacons letter stating that Dr. Lui provided the 2002 Trust HK$100 million to acquire Galaxy shares).

Lui was never the beneficial owner of shares in Netfinity or WG.  When WG and Netfinity were incorporated and initial shares issued, Lui, in his capacity as Trustee of the 2002 Trust, was entered on the share register of each company as the "record owner" of shares. *See* ECF No. 22, pp. 3-5 (letter from Baker & McKenzie, dated June 16, 2016, regarding beneficial and legal ownership under Hong Kong Law).   Lui was a director of WG, and he resigned his directorship of WG on July 20, 2007, eight years before the IRS served the Document Summons.  ECF No. 24-2, p. 38-41 (WG Notice of Change of Secretary and Director filing, noting Lui's cessation as director).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Lui never had any signatory power over, or financial interest in, any bank account of Netfinity.  *See* ECF No. 24-2 pp. 73-79 (declarations of WG and Netfinity directors declaring that, as of January 2005, Lui held shares solely in his capacity as Trustee).  Lui did have signature authority over a bank account for WG, but that authority ended  effective March 30, 2006, more than nine years prior to the Document Summons. ECF No. 24-2, p. 12 (letter from Hang Seng Bank confirming the date Lui ceased to have signature authority).

In his capacity as Trustee of the 2002 Trust, Lui had the legal ability to control documents related to WG and Netfinity until July 26, 2014.  However, Hong Kong law required that documents for Hong Kong companies, such as WG, be held in Hong Kong at all times.   *See* Hong Kong New Companies Ordinance, Section  374 (stating that a Hong Kong company's records must be kept in Hong Kong) (available at http://www.cr.gov.hk/en/companies_ordinance).   Any ability Lui had to control or obtain documents as Trustee of the 2002 Trust ceased on July 26, 2014, as described *infra* in Part I.D of this Amended Memorandum.  *See, e.g.*  ECF No. 24-6, pp. 63-71 (letters from Kwok Yih & Chan law firm confirming that Lui's siblings, non-U.S. Persons located outside of the United States, control all records and documents related to Netfinity and WG).

**B.**     **The IRS Audit**

In September 2013, the IRS initiated an audit of Lui and his wife for the year 2010.  In August 2014, the IRS expanded the audit to include the 2005-2009 and 2011-2012 tax years.  During the audit, the IRS Exam team issued 15 Information Document Requests ("IDRs"), a Formal Document Request ("FDR"), and two summonses (i.e. the Testimonial Summons and the Document Summons).  Lui fully and timely responded to the IDRs, the FDR, and the both summonses, except that Lui could not provide all documents related to Netfinity and WG.

In his responses to the Document Summons, and attached IDR 12, Lui provided significant documentation to the IRS, including but not limited to, banking records, W-2 earnings summaries, domestic and foreign securities statements, invoices for professional services, foreign holding information, personal and real estate loan information documentation, and documentation of non-taxable gifts.  ECF No. 24, pp. 94-100 (index of documents provided to Internal Revenue Service prepared by Martin A. Schainbaum).  In total, Lui provided over 73 distinct sets of documents.  *Id.*

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Lui produced these documents in five tranches: on October 8, 2014, January 7, 2015, July 17, 2015, July 31, 2015, and August 28, 2015. *Id.* In addition, Lui provided certain documents pursuant to the FDR that were not in his possession or control, specifically the limited documents his family in Hong Kong chose to provide him in response to his requests. ECF No. 24-2, pp. 115-123 (October 26, 2015 letters from Lui to his siblings requesting records for Netfinity and WG).

The IRS audit quickly focused upon Lui's failure to file certain Foreign Bank Account Report ("FBAR") filings. Significantly, one of the IRS Exam team's early IDRs focused only upon Lui's FBAR filings and foreign bank statement records. ECF No. 23-3, p. 3 (IRS IDR-FBAR 001, dated January 29, 2014, requesting, among other documents, "[c]opies of all delinquent FBARs for year 2008, 2009, 2010, 2011, and 2012").

On February 11, 2014, Lui submitted FBAR filings for years 2008, 2009, 2010, 2011 and 2012. ECF No. 23-3, pp. 5-10. Importantly, Lui included a 2012 FBAR among the FBARs he submitted despite the fact that Lui had already timely filed the 2012 FBAR, before receiving the initial audit notice in September 2013. *See* ECF No. 23-3 p. 3; ECF No. 23-4, pp. 5-14. Lui filed this second 2012 FBAR because the IRS insisted that Lui had *not* previously filed the 2012 FBAR. Despite Lui and his counsel's repeated attempts to get the IRS to search its own records and admit that Lui had timely filed the 2012 FBAR, IRS Agent Yang repeatedly – and, as it turned out, incorrectly -- denied it. After submitting the 2008-2012 FBARs, the IRS Exam team continued to question the existence of the original 2012 FBAR and Lui's personal knowledge of his FBAR obligations. *See* ECF No. 11-1, pp. 25:14-26:18, 27:17-23 (Agent Yang's assertions at Lui's August 4, 2014 deposition that the IRS had no record of Lui's original 2012 FBAR) and p. 42:10-11 (questions regarding Lui's knowledge).

Finally, on January 21, 2016, the newly assigned IRS Revenue Agent, Esther Lee, inadvertently sent to Lui an official United States Financial Crime Enforcement Network ("FINCEN") transcript confirming that the IRS had, indeed, received Lui's timely, original 2012 FBAR filing. ECF No. 23-4, pp. 5-14 (facsimile from Agent Lee containing Lui's timely 2012 FBAR filing, dated June 26, 2013, received date of July 5, 2013, and signature date of June 26, 2013). The IRS' repeated requests for the FBAR already in its possession, the agency's refusal to

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

rationally discuss Lui's reasonable assertions suggested the IRS was acting in bad faith and that Lui therefore could not rely upon the IRS assertion that it was merely conducting a civil audit of his 2010 tax year.

**C.  The July 8, 2014 Testimonial Summons**

Having first created a climate of distrust by its continued refusal to acknowledge that Lui had timely filed a 2012 FBAR prior to the audit, on July 8, 2014, the IRS served the Testimonial Summons to Lui asking him to appear for a transcribed interview on August 4, 2014.  Lui complied with the summons, and was deposed by IRS Chief Counsel Donald Priver, Exam Group Manager Frances N. Chenoweth, and Revenue Agent Meiling Yang.  ECF No. 11-1 (transcript of August 4, 2014 IRS interview of Lui).[1]

The interview included three categories of questions which sought testimony that Lui and his counsel reasonably believed could be used against him in criminal prosecution.

1. Questions about information reporting related to foreign assets, including FBAR information reporting.  For example, IRS counsel asked Lui "[h]ow many foreign financial accounts did you have in 2010?", "[d]id any foreign corporation you owned in 2010 have bank accounts or financial accounts?", and "[w]hy did you not tell Robert McEligot, your tax return preparer, that you have a foreign bank account with Po Kay Securities when he first time prepared your return ?"  ECF No. 11-1, pp. 18:17-20, 40:17-18, and 46:6-8.

2. Inquiries related to unreported income from foreign assets.  For example, IRS counsel asked Lui "[h]ave you reported all dividend income earned through this account on your return since you opened the account?" and "[w]hy did you set up the foreign financial account?"  ECF No. 11-1, pp. 15:15-16, 16:15-17.

3. Questions seeking Lui's understanding of the law, and directed at Lui's *mens rea* in

---

[1] As mentioned above, during the December 15, 2016 hearing, Lui's former counsel mistakenly stated, when asked by the Court, that the transcript of the IRS interview was not in the record.  The interview transcript was previously submitted to this Court, by the Government, at ECF No. 11-1. This error likely prevented the Court from conducting the question-by-question analysis required "to assess the questions, their setting, and the peculiarities of the case."  *United States v. Drollinger*, 80 F.3d 389, 392 (9th Cir.1996)

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

relation to information reporting obligations. For example "[d]o you know that you have the obligation to report the existence of foreign financial accounts?", "[a]re you required to file form TDF 90-22.1, Report of Foreign Bank and Financial Accounts, FBAR, for year of opening of foreign financial account number [redacted] 383 of Po Kay's Securities Limited to year 2007?", and "[w]hen did you first learn of your FBAR filing requirement?" ECF No. 11-1, pp. 20:15-19, 29:11-13, 42:10-11.

During the interview, Lui exercised his Fifth Amendment rights and raised certain evidentiary privileges in response to these various questions. *See generally* ECF. No. 11-1.

### D. Dr. Lui's Instructions to Lui on July 26, 2014

On July 26, 2014, Dr. Lui exercised the power he had reserved for himself alone to dictate the timing and allocation of the 2002 Trust assets. ECF No. 24-2, p. 19 (letter from Dr. Lui to Lui allocating trust assets and permitting distribution of trust assets). Specifically, in celebration of his eighty-fifth birthday, Dr. Lui issued a letter (the "2014 Letter") to Lui, allocating all trust assets to Lui's brothers and sisters. *Id*. Dr. Lui did not allocate any of the 2002 Trust assets to Lui.[2] *Id*. As a result, Lui never had any financial or beneficial interest in the 2002 Trust assets, either during the period he acted as Trustee, or after his father allocated the assets to Lui's siblings.

Immediately after Dr. Lui allocated the 2002 Trust assets, Lui's siblings demanded that all of the 2002 Trust assets be distributed to them in the percentages allocated by Dr. Lui. *See* ECF No. 24-2, p. 35 (direction from Lui's siblings). As a result, all shares in Netfinity and WG were transferred to Lui's adult brothers and sisters, all of whom are non-U.S. resident aliens. Upon the distribution of the assets, the 2002 Trust dissolved because it no longer held any assets. *See* ECF No. 23 p. 7 (William K. Norman opinion regarding the 2002 Trust). Concurrently, on July 26, 2014, Lui's position as a director of Netfinity ceased. *See* ECF No. 24, p. 105 (Netfinity register of directors listing Lui's resignation as director); *see also* ECF No. 24, pp. 107-109 (Netfinity Share

---

[2] At the same time that he allocated all the 2002 Trust assets to Lui's siblings, Dr. Lui provided a separate cash gift to Lui out of Dr. Lui's personal assets. Specifically, on July 26, 2014, Dr. Lui executed a Deed of Gift. ECF No. 24-2, pp. 20-22. The cash gift made under the deed was HK $500 million, which was funded on May 4, 2015. *Id*. Dr. Lui's gift to his son was not particularly notable in light of Dr. Lui's resources. The IRS has asserted that Dr. Lui is the second wealthiest person in Asia. *See* ECF No. 24-2 p. 47.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Register showing the transfer of all Netfinity shares from the Trustee to siblings Alexander Lui, Paddy Lui, Francis Lui, and Eileen Lui).

The allocation of the 2002 Trust assets by Dr. Lui, and Lui's siblings' demand for the assets, removed any and all control that Lui had over documents related to WG and Netfinity, which he only controlled as a result of his capacity as Trustee. Indeed, it is only because of his former capacity as Trustee that Lui could be considered to have any ability to control the WG and Netfinity corporate documents.

Since July 26, 2014, all the records of Netfinity and WG have been in the possession, custody, care, or control of Lui's siblings. *See* ECF No. 24-2, p. 154; ECF No. 24-6, pp. 63-71. Lui has no enforceable legal right to obtain the records. *See* ECF No. 21-5, pp. 3-7 (letter from Baker & McKenzie, dated June 16, 2016, regarding Lui's inability to compel production of documents relating to WG); *see also* ECF No. 22-6, pp. 3-16 (opinion letter from Maples & Calder in the British Virgin Islands regarding Lui's inability to compel production of documents relating to Netfinity).

**E.  The July 29, 2015 IRS Document Summons**

On July 29, 2015, the IRS served the Document Summons and IDR No. 12. The Document Summons demanded production of records described in IDR No. 12, including foreign records and financial accounts of Netfinity and Jatur Sdn. Bhd., a Malaysian company ("Jatur"). ECF No. 24, pp. 77-92.

On August 28, 2015, Lui timely produced the records requested in the Document Summons that he was able to obtain. ECF No. 24, pp. 94-100 (index of documents provided to Internal Revenue Service prepared by Martin A. Schainbaum). The August 28, 2015 production included all the documentation in Lui's possession relating to Jatur, including, but not limited to, bank statements, company financials, minute books, tax returns, real estate holding registries, share certificates, bank account applications, and certificates of incorporation. *Id.* Following the August 28, 2015 production, Lui had produced all the records described in IDR No. 12 (the summons) that were in his possession, custody, care, and control as of July 29, 2015. ECF No. 24-2, pp. 73-79 (declarations from the directors of Netfinity declaring that Lui does not have possession, custody,

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

care, or control of Netfinity records.)

Notably, Lui collected and produced the Jatur records despite not being a shareholder of Jatur and not having had any financial or equity interest in the company. *See* [ECF No. 24](), pp. 111-113. The IRS summoned the Jatur records despite the fact that, on July 31, 2015, Lui provided the IRS with a letter showing that Jatur was owned by a separate chain of companies and ultimately by a trust controlled by Dr. Lui (not the 2002 Trust).[3] *See* [ECF No. 24-1](), pp. 59-61. Since August 28, 2013, Jatur has been owned by a Dr. Lui charitable foundation, also unrelated to Lui.[4]

On August 10, 2015, the IRS issued IDR 13 and an FDR pursuant to 26 U.S.C. § 982. *See* [ECF No. 24-1](), pp. 169-178. The FDR, with IDR 13, sought records from foreign companies. *Id.*

On October 14, 2015, Lui produced documents to the IRS in response to the FDR and IDR 13. Lui supplemented the production on November 6, 2015. *See* [ECF No. 24-1](); pp. 67-77 & [24-1](); pp. 78-80. On November 25, 2015, Lui again supplemented his response to the FDR after obtaining a letter from Hang Seng Bank Limited. [ECF No. 24-2](), pp. 11-12.

**F.      Lui's Efforts to Obtain Documents Responsive to the Document Summons**

Lui exhausted all available means to respond to the Document Summons. Lui has repeatedly requested the records of Netfinity and WG from his four siblings, from banks, from the registered agent for Netfinity, and from his siblings' lawyer. *See* [ECF No. 24-2]() pp. 115-147. (requests to Alexander Lui, Paddy Lui, Francis Lui, and Eileen Lui, banks, and agents for documents related to Netfinity and WG). Lui personally made three trips to Hong Kong to persuade his siblings and their lawyer to provide him with the copies of the requested records. *See* [ECF No. 24-2](), pp. 150-152 (Lui's flight records from San Francisco to Hong Kong). All of Lui's siblings, the banks, a British Virgin Islands registered agent, and his siblings' lawyer refused to provide him with the requested records. *See* [ECF No. 24-2](), pp. 154-163; [ECF No. 24-6](), pp. 63-71. (letters rejecting Lui's requests for documents).

---

[3] The government agrees that Lui has complied with the summons request for documents related to Jatur. *See* [ECF No. 33](), p. 8:3-4.
[4] The U.S. charitable foundation (unrelated to the 2002 Trust) which ultimately owned Jatur, is a private foundation pursuant to 26 U.S.C. § 501(c)(3). It files with the IRS annual Forms 990-PF, Return of Private Foundation, the last three years of which are available for public inspection pursuant to 26 U.S.C. § 6104.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Lui engaged two foreign law firms to determine what legally enforceable rights he has pursuant to the laws of the British Virgin Islands and Hong Kong to compel production of the records. Both foreign law firms advised Lui that he has no legally enforceable right to compel his siblings, or the banks, to produce the copies of the requested records. *See* ECF No. 21-5, pp. 3-7 (letter from Baker & McKenzie, dated June 16, 2016, regarding Lui's ability to compel documents relating to WG); *see also* ECF No. 22-6, p. 3-16 (opinion letter from Maples & Calder regarding Lui's ability to compel production of documents relating to Netfinity).

Lui also produced documents for two other foreign companies, California Productions Limited, a Macau company ("CP"), and Golden Island Limited: both Macau companies dissolved in 2007 and 2006, respectively. Lui produced the income tax returns of these companies for all years of operations that had been obtained from Macau government records. *See* ECF No. 24-2, pp. 164-197; ECF No. 24-3, pp. 1-12. On June 17, 2006, Lui also produced Registrations and Annotations and corresponding statements from the Commercial and Moveable Property Record Offices in Macau which confirm their dissolution. *See* ECF No. 24-3, pp. 14-40; ECF No. 24-3, pp. 42-75. For this purpose, Lui made inquires through his retained Macau legal counsel. *See* ECF No. 24, pp. 59-68. No person could be found who had the records other than records available from the Macau government. After a Macau company is dissolved, records are only required to be kept for five years. *See* ECF No. 24, p. 68. Thus, the IRS has in its possession the existing records of these two dissolved entities that Lui was able to find and obtain.

## III. ARGUMENT

In a summons matter, the United States has the initial burden of making a prima facie showing that the summons is valid. *United States v. Powell*, 379 U.S. 48 (1964). If the government makes its prima facie case, a taxpayer challenging the summons must show that enforcement would be an abuse of process. *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995). A party opposing a summons as an abuse of process must allege facts sufficient to create a plausible inference. *United States v. Clarke*, 134 S. Ct. 2361, 2368 (2014) (holding that a plausible inference standard applies); *See also United States v. Goldman*, 637 F.2d 664, 665 (9th Cir. 1980) (an initial show cause order does not absolve the government of its burden of demonstrating that a challenged

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

summons is valid).

Lui may challenge a summons on any appropriate ground, and the Court must balance the government's interest in summary proceedings to expedite tax collection with Lui's right to protection from the improper use of the IRS summons powers. *See United States v. Stuckey*, 646 F.2d 1369, 1373 (9th Cir. 1981). In challenging the summons Lui must only make a showing of facts that give rise to a plausible inference of invalidity, he may rely upon circumstantial evidence, and he is not required to present a fully "fleshed out case." *United States v. Clarke*, 134 S. Ct. 2361, 2368 (2014) (unanimous court held that a taxpayer challenging an IRS summons must only offer credible facts that give rise to a plausible inference). *See also Goldman*, 637 F.2d 664, 665 (9th Cir. 1980) (government bears burden of demonstrating that a challenged summons is valid).

With regard to the Document Summons, Lui asserts that (i) the government failed in making its prima facie case under *Powell* for documents Lui produced, and (ii) that enforcement for additional WG and Netfinity documents would be an abuse of process. Enforcement of the Document Summons for the additional documents sought by the IRS would be an abuse of process because the government has not offered any evidence that Lui possessed or controlled any documents on the service date of the Document Summons, and Lui has established specific facts that demonstrate that he did not possess or control the WG and Netfinity documents sought by the IRS. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) (lack of possession or control of requested records is a defense to enforcement of a summons); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (duty to retain possession of summoned documents occurs upon issuance of IRS summons).

For the Testimonial Summons, Lui asserts that enforcement would be an abuse of process because he properly asserted his Fifth Amendment rights on a question-by-question basis. *See Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (holding that the Fifth Amendment "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used").

This Amended Memorandum addresses each of these arguments in turn.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

**A.** **The Document Summons Is Unenforceable for Documents Lui Already Produced to the IRS**

**1.** **Lui Produced Substantial Documents to the IRS During the Audit**

Lui has provided this Court evidence of his substantial production of records to the IRS, and the IRS has not, and cannot, dispute those productions. Specifically, Lui has provided thousands of pages of documents to the IRS on six separate occasions. *See generally,* ECF No. 24, pp. 94-100; ECF No. 24-1, pp. 66-167; ECF No. 24-2 pp. 10-12 (index and copies of documents produced to IRS).

Notably, the Document Summons expressly highlighted two foreign entities for which the IRS sough information: Jatur and Netfinity. The IRS focus on two entities in the Document Summons is particularly relevant because Lui has produced responsive documents for one, Jatur, and demonstrated conclusively that he does not possess records for the other, Netfinity.

With regard to Jatur, on August 28, 2015, Lui produced a substantial amount of documentation relating to Jatur. *See* ECF No. 24, pp. 94-100 (index of documents provided to Internal Revenue Service prepared by Martin A. Schainbaum). The records included bank statements, minute books, tax returns, real estate holding registries, share certificates, bank account applications, and certificates of incorporation. *Id* at 98. As discussed *infra* in Part II.B., Lui would have made a similar production of documents for Netfinity, but he did not as of the Document Summons date, and does not, possess or control the documents. *See, e.g.,* ECF No. 24-2 pp. 73-79 (declarations from the directors of Netfinity declaring that Lui does not have possession, custody, care, or control of Netfinity records).

**2.** **The Government Cannot Make its Prima Facie Case and Enforce an "Unnecessary" Summons for the Documents Lui Already Produced**

Because the IRS possesses the many documents Lui produced, the government cannot meet its burden of showing a prima facie case for enforcement as to those documents. In *Powell* the Supreme Court construed the explicit limitation in 26 U.S.C. § 7605(b) forbidding "unnecessary" summonses as barring the IRS from summonsing documents "already possessed" by the IRS. Courts enforce this prohibition when the summons recipient is the taxpayer under audit and the

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

taxpayer produced the documents during the IRS audit. *See, e.g., United States v. Toyota Motor Corp.*, 569 F.Supp. 1158, 1161 (C.D. Cal. 1983) (petition to enforce IRS summons denied for portion of the summons requesting documents taxpayer previously provided to the IRS).

**B.      Enforcing the Document Summons Would Be An Abuse of Process Because Lui Does Not Possess or Control the Additional Documents the IRS Seeks**

All summons recipients have an absolute right to contest enforcement proceedings, including on the ground of impossibility due to lack of possession or control. *See United States v. Rylander*, 460 U.S. 752, 757 (1983); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980). *See also United States v. Stuckey*, 646 F.2d 1369, 1373 (9th Cir. 1981) (taxpayer has a right to protection from improper use of IRS summons powers).

To successfully assert a defense of non-possession, a recipient must (i) raise non-possession in the initial enforcement proceeding; (ii) produce credible evidence that he or she does not possess or control the documents; and (iii) show that the recipient did not cause the documents to not be in his or her possession after the IRS served the summons. *See United States v. Rylander*, 460 U.S. 752, 757 (1983); *Asay*, 614 F.2d at 660 (recipients of summonses bear the burden of offering credible evidence of non-possession and self-induced inability to produce is not a defense). *See also Couch v. United States*, 409 U.S. 322, 329 n.9 (1973) (possession is tested at the time the summons is served). Lui has met each of these requirements, and he more than met the mere plausible inference standard established by the Supreme Court in *Clarke*. 134 S. Ct. 2361, 2368 (2014) (taxpayer challenging an IRS summons must only offer credible facts that give rise to a plausible inference).[5]

---

[5] The government's original Reply to Opposition to Show Cause (ECF No. 33, filed July 1, 2016) flatly misstates the law regarding burden of proof, relying upon out-of-date cases from outside the Ninth Circuit. The government leans heavily upon *United States v. Kis*, 658 F.2d 526, 536 (7th Cir. 1981) to suggest that Lui bears the burden of proof. *Kis* recognized a split in the circuits regarding the appropriate standard, and it pre-dates *Clarke*, 134 S. Ct. 2361, 2368 (2014) in which the Supreme Court applied a plausible inference standard. Further, the government does not cite or discuss *Goldman*, 637 F.2d 664, 668 (9th Cir. 1980), which states that following a show cause order the government continues to bear the burden of proving a summons is valid.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

### 1. Lui Properly Raised Non-Possession and Lack of Control In This Initial Enforcement Proceeding

The United States initiated this enforcement action by filing its Verified Petition. Lui promptly raised non-possession in his Verified Answer and the accompanying Original Memorandum, each dated June 21, 2016. *See* ECF No. 21 at ¶¶ 12, 14, 24, 25 and 26 (Verified Answer); and ECF 21-1, *passim* (Original Memorandum).

### 2. Lui Has Introduced Substantial Evidence of Lack of Possession or Control

Lui has provided the court substantial evidence that he neither possesses nor controls the WG and Netfinity documents, or any other additional documents the government alleges he can produce.[6] Specifically, Lui has provided the following 16 documents proving that he does not possess, control, or have access to those additional documents:

(i) **January 21, 2002** letter from Dr. Lui to Lui directing Lui to hold shares in trust for Lui and his siblings, but retaining control over the distribution of trust assets. *See* ECF No. 24-2, pp. 17-18 (also Hammill Decl., Exhibit A).[7]

(ii) evidence showing that, as of **March 30, 2006**, Lui ceased having signature authority

---

[6] At the December 15, 2016 hearing, government counsel wrongly suggested that much of Lui's evidence was hearsay. First, the overwhelming majority of the 16 documents relied upon by Lui are not hearsay, consisting of statements of intent, government records, business records, declarations under penalty of perjury, documents with other indicia of reliability, statements in documents that effect an interest in property, or opinions of foreign law. *See* Fed. R. Evid. 803(3), 803(5), 803(6), 803(8), 803(15); Fed. R. Civ. P. 44.1 (court may consider any source of foreign law), 56(c)(4) (declarations for summary judgment). Second, summons enforcement proceedings are "summary proceedings", governed by the Federal Rules of Civil Procedure. *See United States v. Clarke,* 134 S.Ct. 2361, 2367 (2014) (noting that enforcement proceedings are to be "summary in nature" and are not to ultimately adjudicate issues, but to inquire); Fed. R. Civ. P. 81 (stating that Federal Rules of Civil Procedure apply to subpoenas issued by a federal agency except as otherwise provided by statute). In summary proceedings (e.g. summary judgment) courts do not focus on the admissibility of the evidence's form. Courts instead focus on the admissibility of its contents. *Fraser v. Goodale*, 342 F.3d 1032,(9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

[7] Concurrently filed with this Amended Memorandum is the Declaration of Robert Hammill in Support of Amended Memorandum of Points and Authorities in Opposition to Summons, which attaches the primary 16 documents on which Lui relies to prove that he does not possess or control the additional documents sought by the IRS (all of which were previously submitted to the Court and have ECF citations).

14

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

over the Hang Seng Bank account held by WG, specifically a letter dated November 18, 2015 from Hang Seng Bank. ECF No. 24-2, p. 12  (also Hammill Decl., Exhibit B).

(iii)  **September 27, 2007** Notification of Change of Secretary and Director for WG, reflecting that Lui ceased being a director as of July 20, 2007. ECF No. 24-2, p. 38-41. (also Hammill Decl., Exhibit C).

(iv)  **July 26, 2014** letter from Dr. Lui to Lui exercising Dr. Lui's exclusive authority over the 2002 Trust assets and allocating those assets to Lui's siblings.  *See* ECF 24-2, p. 19 (also Hammill Decl., Exhibit D).

(v)  **July 26, 2014** letter from Lui's siblings directing the 2002 Trust be dissolved and its assets distributed to the siblings in accordance with their beneficial interests.  *See* ECF No. 24-2, p. 35 (also Hammill  Decl., Exhibit E).

(vi)  stock registers of Netfinity and WG showing that, on **July 26, 2014**, Lui resigned as a director, and all shares held in the name of Lui were transferred to the names of his four siblings. ECF No. 24, p. 105 (Netfinity register of directors listing Lui's resignation as director); ECF No. 24, pp. 107-109 (Netfinity register showing the transfer of all Netfinity shares from Lui to siblings Alexander Lui, Paddy Lui, Francis Lui, and Eileen Lui); ECF No. 24-2, p. 107-112 (WG annual Hong Kong Companies Registry return showing transfer of WG shares) (also Hammill Decl., Exhibit F).

(vii)  **October 2, 2015** and **June 10, 2016** declarations of Alan Wong Hoi Ping, a director of Netfinity, stating that Lui was never a beneficial owner of Netfinity shares, held Netfinity shares solely in his capacity as Trustee for the 2002 Trust, never possessed any signatory power over a bank account of Netfinity, and does not have possession, custody, or control of Netfinity documents.  *See* ECF No. 24-2, p. 73, 77 (also Hammill Decl., Exhibit G).

(viii)  **October 2, 2015** and **June 14, 2016** declarations of Ng Kok Hai, a director of Netfinity and WG, stating Lui held Netfinity and WG shares solely in his capacity as Trustee for the 2002 Trust, never possessed any signatory power over a bank account

15

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

of Netfinity, and does not have possession, custody, or control of Netfinity documents. *See* ECF No. 24-2, p. 75, 79 (also Hammill Decl., Exhibit H).

(ix)    **November 4, 2015** letter from the Deacons law firm in Hong Kong representing Dr. Lui and stating that Lui only held the shares of Galaxy as a Trustee of the 2002 Trust, that he was never a beneficial owner of the Galaxy shares, and that Lui did not receive any assets from the 2002 Trust. *See* ECF No. 24-2, pp. 14-16 (also Hammill Decl., Exhibit I).

(x)    **November 5, 2015, March 11, 2015, and June 17, 2016** letters from Kwok, Yih & Chan, the attorneys for Lui's siblings, repeating the position of Lui's siblings that they will not produce additional documents, and stating the factual basis for the sibling's control of the documents. *See* ECF No. 24-6, pp. 63-71 (also Hammill Decl., Exhibit J).

(xi)    **May 10, 2016** letter from Francis Yiu-Tung Lui, Lui's sibling, stating that he and the other non-U.S. siblings possess or control the documents requested by the IRS, and that they decline to provide them to Lui. *See* ECF No. 24-2, p. 154 (also Hammill Decl., Exhibit K).

(xii)    **June 16, 2016** letter from two U.S.-admitted attorneys at Baker & McKenzie (Hong Kong) opining that the 2002 Trust was a foreign trust under U.S. law. ECF No. 22-5, pp. 3-7 (also Hammill Decl., Exhibit L).

(xiii)    **June 16, 2016** letter from Baker & McKenzie (Hong Kong) outlining the legal validity and terms of the 2002 Trust Dr. Lui established in his January 21, 2002 letter to Lui. *See* ECF No. 22-2, pp. 3-7. (also Hammill Decl. Exhibit M).

(xiv)    **June 16, 2016** letter from Baker & McKenzie (Hong Kong) stating that Lui, as a former Trustee, has no right to access WG documents after retiring as Trustee and has no valid cause of action to obtain WG banking records. *See* ECF No. 21-5, pp. 3-7. (also Hammill Decl., Exhibit N).

(xv)    **June 17, 2016** letter from Baker & McKenzie (Hong Kong) stating that under Hong Kong law (i) a trust cannot be a registered share owner, (ii) that a share register would

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

not state whether the legal owner is holding shares directly or for another person (e.g. in trust), (iii) that the use of nominee shareholders under Hong Kong law is common. *See* ECF No. 22, pp. 3-5. (also Hammill Decl., Exhibit O).

(xvi)    **June 17, 2016** letter from the Maples & Calder law firm regarding law in the British Virgin Islands and Lui's inability to compel production of documents relating to Netfinity. *See* ECF No. 22-6, p. 3-16. (also Hammill Decl., Exhibit P).

Two or three of these 16 documents are sufficient for Lui to meet his burden of raising a *plausible inference* that he does not possess or control the WG or Netfinity documents. *See Clarke*, 134 S. Ct. 2361, 2368 (2014) (plausible inference is all that taxpayer must establish to invalidate summons). Collectively, the 16 documents reinforce and corroborate one another and thus provide substantial compelling evidence that Lui does not possess or control, and cannot obtain the documents the IRS seeks.

The government's Document Summons focuses explicitly on records for Netfinity, and Lui provided declarations of the directors and provided the IRS with the names of individuals who had access to those documents. *See* ECF No. 24-2, pp. 73-79 (declarations of Netfinity directors); ECF No. 24-2, pp. 115-147 (requests to Alexander Lui, Paddy Lui, Francis Lui, and Eileen Lui, banks, and agents for documents related to Netfinity and WG). Lui has repeatedly sought to obtain additional documentation to assist the IRS in resolving his audit, but he has done all that he can do.

Because Lui has produced such substantial evidence of his non-possession, he has more than met his burden, which is only to produce sufficient evidence of his inability to comply to raise a question of fact. *United States v. Rylander*, 460 U.S. 752, 757-758 (1983). *See also Goldman*, 637 F.2d 664, 668 (9th Cir. 1980) (stating that an initial show cause order does not absolve the government of its burden of demonstrating that a summons is valid); *United States v. Toyota Motor Corp.*, 569 F.Supp. 1158, 1161 (C.D. Cal. 1983) (IRS summons denied when respondent produced evidence regarding lack of possession and government introduced none).

**3.    The Government Has Not Met Its Burden of Persuasion**

The burden of persuasion regarding possession remains on the government, and what may be required to sustain the burden varies according to the evidence produced by the defendant. *See* Fed.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

R. Evid. 301 ("the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally"); *United States v. Gertner*, 65 F.3d 963, 968 (1st Cir. 1995) (in a post *Rylander* decision, the First Circuit stated in a summons matter that it was "hard-pressed to fathom why IRS enforcement proceedings should diverge from this principle [of Fed. R. Evid. 301]. It is the IRS, not the taxpayer, that seeks to invoke the processes of the court"). *See also Rylander*, 656 F.2d 1313, 1319 (1981) *reversed by Rylander*, 460 U.S. 752 (1983) (Ninth Circuit, in a point not overruled by the Supreme Court, held that once a defendant produces detailed evidence regarding his inability to comply, the government has the additional burden of persuading the court that the defendant actually is able to comply); *Goldman*, 637 F.2d 664, 668 (9th Cir. 1980) (after show cause order the government continues to bear the burden of proving a summons is valid).

Here, the government has not offered *any* evidence to refute the substantial evidence offered by Lui. Indeed, the government has not offered any evidence showing (i) that Lui ever physically possessed the documents, or (ii) that Lui controlled the documents on July 29, 2015, the service date of the Document Summons. Further, the evidence produced by Lui is so substantial that the government would require significantly greater evidence to meet its burden of persuasion. *See* Fed. R. Evid. 301. The government cannot credibly undermine the collective credibility of the corporate share registers, the declarations of the third-party corporate directors, and the correspondence from Lui's sibling and the siblings' lawyer. In addition, unlike the facts in many of the IRS summons cases (*see, e.g.*, *Rylander*, 460 U.S. 752 (1983); *Asay*, 614 F.2d 655 (9th Cir. 1980)) in which the taxpayer did not produce any documents or refused to appear for an IRS interview, Lui has produced thousands of pages of documents responsive to IRS requests and did appear for an IRS interview. *See generally*, ECF No. 24, pp. 94-100; ECF No. 24-1, pp. 66-167; ECF No. 24-2 pp. 10-12 (index and copies of documents produced to IRS); ECF No. 11-1 (transcript of IRS interview).

If the government had offered any evidence of the existence of documents and Lui's control on the date of the Document Summons (it has not), the evidence must prove control "firmly placed in reality, not in an esoteric concept such as 'inherent relationship.'" *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (internal citations

omitted) (affirming partial denial of subpoena duces tecum where union constitution did not grant right to take possession of locals' records). As a result, the government cannot offer mere speculation about the existence of the documents or Lui's control of documents just because he once was a trustee of the foreign situs 2002 Trust, or because the documents are now controlled by his siblings. The reality is that the government has failed to offer *any* evidence contradicting the evidence that Lui has provided regarding the 2002 Trust under Hong Kong law and Lui's inability to access documents, and, therefore, the summons cannot be enforced. *See Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999) (holding that summary judgment must be entered for a party that offers unrebutted evidence of foreign law).

### 4. Lui Did Not Cause the Documents to Not Be in His Possession or Control After the IRS Served the Document Summons

It is upon receipt of a summons, and not earlier, that a summons recipient has a duty to retain possession of the documents pending a judicial determination of the enforceability of the summons. *See United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (stating that an IRS summons imposes a duty to retain possession of summoned documents pending a judicial determination of the enforceability of the summons); *see also United States v. Darwin Constr. Co.*, 873 F.2d 750, 755 (4th Cir. 1989) (stating that rights and obligations of the party on whom the summons was served become fixed when an IRS summons is served).

All of the WG and Netfinity records sought by the IRS were definitively beyond Lui's control on and after July 26, 2014, over 12 months before the IRS served the Document Summons. Lui lost control when his father, Dr. Lui, exercised his legal right to allocate the assets of the 2002 Trust, and Lui's siblings exercised their right to demand the distribution of those assets. As of July 26, 2014, upon these actions by Dr. Lui and Lui's siblings, Lui lost all control of the 2002 Trust assets, including any WG or Netfinity documents.[8] Specifically, upon his father causing the distribution of the 2002 Trust assets, Lui lost whatever ability he may have had to obtain possession or control over the records of Netfinity or WG prior to that date.[9]

_____

[8] As described above at pages 4-5 and 8-10, Lui produced that which he did possess, or could obtain.

[9] Unlike in some reported cases, Lui has not waited to assert non-possession in a post-enforcement contempt proceeding. *See, e.g., Rylander*, 460 U.S. at 757; *United States v. Sorrells*, 877 F.2d 346,

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

**Lui Engaged in Reasonable Efforts to Obtain the Requested Documents**

During the course of the IRS audit, Lui engaged in numerous efforts to obtain and provide documents requested by the IRS.  *See* ECF No. 24-2, pp. 115-147 (requests to Alexander Lui, Paddy Lui, Francis Lui, and Eileen Lui, banks, and agents for documents related to Netfinity and WG); ECF No. 24-2, pp. 150-152 (Lui's flight records from San Francisco to Hong Kong);  ECF No. 21-5, pp. 3-7, ECF No. 22-6, p. 3-16 (opinion letters from Baker & McKenzie and Maples and Calder, respectively, engaged by Lui to explore legal avenues for obtaining requested documents).

Lui's efforts to obtain the documents vastly exceeded the reasonable efforts required by courts in summons enforcement actions.  *See United States v. Rizzo*, 539 F.2d 458, 466 (5th Cir. 1976) (holding that a good faith effort to search for requested documents is sufficient reasonable efforts to comply with a summons).  All of Lui's siblings, banks, a British Virgin Islands registered agent, and his siblings' lawyer refused to provide Lui with the requested records.  *See* ECF No. 24-2, pp. 154-163.  The government has not identified any additional reasonable efforts, and it cannot credibly do so.[10]

The government relies on *United States v. Hayes*, 722 F.2d 723 (11th Cir. 1984), to allege that Lui has not made sufficient reasonable efforts.  In fact, in *Hayes*, the 11th Circuit observed that seeking legal advice about one's rights is the type of conduct that satisfies the reasonable efforts standard.  *Id*. at 725-726.  Here, Lui has sought advice from multiple law firms and provided evidence of such efforts.  Further, the *Hayes* court noted its decision was based upon its conclusion that the taxpayer had legal control (via a partnership agreement) over the records at issue, which is

348 (5th Cir. 1989).  Even if he had, however, Lui  would be permitted to raise a present inability to comply as a defense to entry of an order of contempt.  As the Supreme Court said in *Rylander*, "[w]hile the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible." *Rylander*, 460 U.S. at 757.  A taxpayer in a contempt proceeding that claims present inability to comply with the summons has the burden of production with respect to that impossibility. S*ee United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996).  The fact that a taxpayer can present such evidence in a contempt proceeding, and here Lui has correctly presented such evidence at the enforcement stage, further underlines why the Court should find that enforcing the Document Summons would be an abuse of process.

[10] Not providing Lui fair notice of what is required of him to comply with the summons violates due process.  *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 246 (2012) (holding that due process means required conduct must be reasonably discernible before civil punishment can be imposed); *see also United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983), cert. den. 406 U.S. 980 (1984) (reversing tax convictions because IRS regulations failed to provide fair notice guidance regarding offshore trusts).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

directly contrary to the record here, where Lui has demonstrated he did not have control on the service date and the government has not offered any contrary evidence. *Id*. at 725.

### C. The Testimonial Summons Is Unenforceable Because Lui Properly Asserted His Fifth Amendment Rights

#### 1. The IRS Interview Questions Confronted Lui with Real, Not Trifling or Imaginary Hazards of Self-Incrimination

Enforcing the Testimonial Summons would be an abuse of process because Lui properly invoked his rights under the Fifth Amendment when confronted with a real, non-trifling, risk of criminal prosecution. An individual is entitled to assert his or her Fifth Amendment right so long as the individual faces a real and substantial risk of criminal incrimination, not one that is merely a "trifling" or "imaginary." *United States v. John Doe*, 465 U.S. 605, 614 (1984), n. 13 (citing *Marchetti v. United States*, 390 U.S. 39 (1968)); *see also United States v. Lamotte*, No. 15-mc-93017-MGM, 2016 U.S. Dist. LEXIS 61704, at 22-23 (D. Mass. Apr. 19, 2016) (upholding Fifth Amendment assertion during IRS civil audit interview despite IRS assertion that no criminal referral had been made and that the IRS audit was merely civil). The existence of such a risk is generally determined from "'examination of the questions, their setting, and the peculiarities of the case.'" *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir.1984) (quoting *United States v. Neff*, 615 F.2d 1235, 1240 (9th Cir. 1980)). The Ninth Circuit has held that it is enough if the potential responses would merely "provide a lead or clue" to evidence having a tendency to incriminate. *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980)). The Fifth Amendment privilege may be asserted on a question-by-question basis. *Drollinger*, 80 F.3d at 393 (9th Cir. 1996).

Here, the questions posed to Lui, and the context of the audit, demonstrate a real, non-trifling, risk of criminal prosecution. As described on pages 6-7, *supra*, Lui's August 4, 2014 deposition consisted of three categories of questions targeted at topics fraught with risk of incrimination: (1) questions related to foreign asset and bank account information reporting; (2) questions inquiring into unreported income; and (3) examinations of Lui's *mens rea* in relation to transactions involving foreign assets.[11] The questions included:

---

[11] As listed supra at 6-7, Lui asserted his Fifth Amendment for three categories of questions. Lui asserted his Fifth Amendment privilege to questions regarding unreported income questions at ECF No. 11-1, pp. 16, 30-31, and 37. Lui asserted his Fifth Amendment privilege for questions inquiring

21

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

i. "When did you first learn of your FBAR filing requirement?" ECF No. 11-1, p. 42:10-11.

ii. "Why did you set up the foreign financial account?" ECF No. 11-1, p. 15:15-16.

iii. "… [t]ell me the reason of not filing Form TDF 90-22.1 for year 2006 and 2007." ECF No. 11-1, p. 24:5-6.

iv. "Do you know that you have the obligation to report the existence of foreign financial accounts?" ECF No. 11-1, p. 29:16-18.

v. "Were you aware of the filing requirement of Form 5471?" ECF No. 11-1, p. 38:12-13.

The three types of questions to which Lui asserted the Fifth Amendment are of particular legal significance in the context of aggressive IRS criminal enforcement of FBAR and tax offenses requiring a mental state of "willfulness." *See* 31 U.S.C. § 5322 (criminal penalties for willful violation of FBAR statute); 26 U.S.C. § 7201 (criminal penalty for willful violation of tax laws). Responses to the questions might not only provide a "clue" or "lead" to uncover incriminating evidences, potential responses to the questions posed could be used to satisfy entire elements of a criminal charge. The questions sought to elicit testimony from Lui that reasonably could be used against him in a criminal prosecution to prove, or provide a link in the chain of evidence to prove, elements of tax evasion or subscribing to a false return, including willfulness. *See Cheek v. United States*, 498 U.S. 192, 201-02 (1991), or the taking of an affirmative act constituting an evasion or attempted evasion of a tax. *See Sansone v. United States*, 380 U.S. 343, 351 (1965).

### 2. Facts Existed to Reasonably Cause Lui and His Counsel to Believe that the IRS Would Commence a Criminal Proceeding

Lui properly asserted his Fifth Amendment privilege against self incrimination at his August 4, 2014 deposition because the questions posed by IRS Chief Counsel Priver, Exam Group Manager Chenoweth, and Revenue Agent Yang reasonably led Lui and his counsel to believe Lui's responses might incriminate him. The Fifth Amendment privilege against self-incrimination embodies the

into his *mens rea* at ECF No. 11-1, pp. 15, 17, 18-20, 24, 29, 32-33, 37-38, and 41-42. Lui's other assertions of his Fifth Amendment privilege are for questions inquiring into foreign asset and bank account information reporting.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

right to be free of self-incrimination compelled by the state.

To properly assert privilege under the Fifth Amendment, an individual must have "reasonable cause to apprehend [such] danger from a direct answer" to questions posed to him. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The Ninth Circuit has held that an individual properly invokes his Fifth Amendment right against self incrimination in response to an IRS summons seeking testimony and documents when there is risk of a tax-related prosecution. *United States v. Troescher*, 99 F.3d 933, 934-35 (9th Cir. 1996).

The Ninth Circuit's ruling in *Troescher* is instructive. In that case, a taxpayer asserted his Fifth Amendment privilege in response to an IRS summons issued after the IRS discovered the taxpayer had failed to file tax returns for multiple years. *Troescher*, 99 F.3d at 933. When the IRS sought enforcement of the summons, the taxpayer filed a statement under seal for the district court to review his privilege claim *in camera*.[12] *Id*. The district court initially enforced the summons, holding that the taxpayer had failed to prove a real and appreciable fear of prosecution for a non-tax offense. *Id*. at 934. On appeal, the Ninth Circuit held that a taxpayer may rightly assert his Fifth Amendment privilege, and overcome an IRS summons enforcement action, when faced with a real and appreciable fear of prosecution for a tax-related crime. In support of its ruling, the Ninth Circuit highlighted numerous precedents in which a taxpayer validly asserted his or her Fifth Amendment privilege when faced with potential threat of prosecution for tax crimes, including failure to file a return. *Id*. (*citing United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir.1995) (holding that "[a]

[12] Here, Lui's former counsel submitted a question-by-question analysis of Lui's Fifth Amendment and other privilege claims for *in camera* review on June 21, 2016. ECF No. 73, pp. 9:2-23 (transcript of December 15, 2016 hearing). The purpose of such a filing is to provide the party asserting the privilege with the opportunity to substantiate his claims, and for the court to consider the questions asked pursuant to the Testimonial Summons. *Drollinger*, 80 F.3d at 393 (9th Cir. 1996). The Court noted deficiencies with this filing because it did not include the transcript of questions asked of Lui, and it included argument the Court stated should be made available to the government. *See* ECF No. 73, pp. 5:8-12:3. Lui's former counsel mistakenly informed the Court that the transcript of the IRS interview of Lui was not in the record. It is indeed in the record, having been filed by Petitioner's counsel. *See* ECF No. 11-1 (transcript of August 4, 2014 IRS interview of Lui). As a result, the Court ordered Lui's then counsel to address this confusion and file publicly the *in camera* submission. ECF No. 73, pp. 24:8-10. Lui asserts the original submission of the *in camera* filing was proper and consistent with processes endorsed by cases such as *Drollinger*, 80 F.3d at 933 (9th Cir. 1996). In addition, however, this Amended Memorandum describes the relevant questions and provides this Court with evidence and argument supporting Lui's Fifth Amendment assertions for the questions asked by the IRS, which the Court can review question-by-question in ECF No. 11-1 (transcript of August 4, 2014 IRS interview of Lui).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

reasonable belief that information concerning income or assets, such as that sought in the summons here, might be used to establish criminal failure to file a tax return can support a claim of Fifth Amendment privilege."; *United States v. Rendahl*, 746 F.2d 553, 555-56 (failure to file tax return); see also *United States v. Turk*, 722 F.2d 1439, 1440 (9th Cir.1983) (failure to file tax return), cert. denied, 469 U.S. 818, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *United States v. Tsui*, 646 F.2d 365, 367 (9th Cir.1981) (income tax evasion), cert. denied, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982); *United States v. Helina,* 549 F.2d 713, 716 (9th Cir.1977) (income tax evasion and willful filing of a false return); *Federal Deposit Ins. Corp. v. Sovereign State Capital, Inc.*, 557 F.2d 683, 686 (9th Cir.1977) (tax fraud)).

In circumstances, like here, where the IRS has specifically alleged that a person did not file required FBARs, asked pointed questions about his knowledge of the filing requirements, and insisted the IRS did not receive a 2012 FBAR filing (that had in fact been filed), a reasonable taxpayer might reasonably suspect that his answers could potentially provide a lead or clue to incriminating evidence. This is particularly true in the current environment of offshore tax investigations and prosecutions in which the government routinely touts its successes in prosecuting tax cases, with an increased focused on investigating "offshore evasion" of taxes and foreign bank accounts.[13]

During the tax audit, Lui filed delinquent FBARs for tax years 2008, 2009, 2010, and 2011, as well as the second 2012 FBAR insisted upon by the IRS. Later, in an effort to resolve the IRS audit of his 2010 tax year, Lui complied with the Testimonial Summons and submitted to a transcribed deposition on August 4, 2014. Yet, during the deposition, Lui faced repeated inquiries

---

[13] Department of Justice, Office of Public Affairs Announcement, *Justice Department Highlights Tax Division's Enforcement Results*, April 9, 2014 (noting that since 2009, the department has publicly charged 74 account holders and 38 bankers & advisors with violations arising from offshore banking activities, with a majority pleading guilty of tax offenses). *See also* Internal Revenue Service, *Foreign Account Filings Top 1 Million; Taxpayers Need to Know Their Filing Requirements*, March 15, 2016 (available at https://www.irs.gov/uac/newsroom/foreign-account-filings-top-1-million-taxpayers-need-to-know-their-filing-requirements.); *Offshore Compliance Programs Generate $8 Billion; IRS Urges People to Take Advantage of Voluntary Disclosure Programs* IR-2015-116, October 16, 2015 (available at https://www.irs.gov/uac/newsroom/offshore-compliance-programs-generate-8-billion-irs-urges-people-to-take-advantage-of-voluntary-disclosure-programs.)

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

into offshore account information filings, knowledge of his offshore accounts, and questions pertaining to his knowledge of legal obligations related to the same type of filing, FBARs, submitted earlier in the audit.

These questions rightfully struck Lui's counsel as rife with risk of potential criminal liability, particularly when (i) the IRS asserted that Lui had improperly failed to file his 2008 through 2012 FBARs; (ii) from the outset of the 2010 tax audit in January 2014, the IRS alleged Lui had not filed a 2012 FBAR, even though Lui had timely done so; and (iii) there were various documents showing that Lui was the Trustee of the 2002 Trust, which the IRS continues to wrongly assert has U.S. tax consequences. Lui is left in similar circumstances as the taxpayer in *Troescher*, facing an IRS summons seeking answers related to failure to file a return (here, FBARs).

Lui's assertion of his Fifth Amendment privilege in response to the government doubting the existence of the 2002 Trust and its questions regarding foreign assets, including assets held by the 2002 Trust, is particularly sound in light of the complex web of reporting obligations the United States imposes upon U.S. persons with connections to foreign assets, the violation of which can include criminal penalties. For example, the Foreign Account Tax Compliance Act imposes reporting by U.S. taxpayers and foreign financial institutions. *See* 26 U.S.C. §§ 1471–1474, 6038D. Other federal statutes require certain reporting related to foreign trusts, which are only taxed upon U.S. source income (*see* 26 U.S.C. § 641(b)) but must in certain circumstances report information to the IRS, information different than U.S. domestic trusts. *See* 26 U.S.C. §§ 6677(b), 7203, 7206 (imposing penalties for failure of a foreign trust to report certain information and related criminal penalties for failing to file, or filing a false tax form).

In light of this real and substantial risk of criminal incrimination, Lui validly invoked his Fifth Amendment privilege. As the Supreme Court stated in *Ohio v. Rehner*, one of the Fifth Amendment's "basic functions … is to protect innocent men … 'who otherwise might be ensnared by ambiguous circumstances.'" 532 U.S. 17, 21 (2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957)). Enforcing the Testimonial Summons would be an abuse of process and a direct violation of Lui's constitutional right against self-incrimination.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

**D.    Enforcing the Testimonial Summons for Certain Additional Questions Would Be An Abuse of Process Because Lui Properly Asserted Other Privileges**

In addition to his Fifth Amendment privilege not to answer certain questions, Lui asserted evidentiary privileges to certain questions, many overlapping with his Fifth Amendment objections. Lui asserted the attorney-client privilege in response to 14 questions, the work product doctrine in response to six questions, and the tax practitioner privilege in response to 15 questions.[14]  *See generally* ECF No. 11-1 (transcript of IRS interview of Lui).  Many of the IRS questions were overbroad, seeking to compel Lui to testify about communications that implicated the attorney-client privilege, the work product doctrine, or the tax practitioner privilege.   For example, without excluding communications with Lui's lawyers or federally authorized tax practitioners, the IRS asked Lui whether he received advice from *anyone* regarding the tax reporting requirements of Netfinity.  *See* ECF No. 11-1, p. 38:5-7 ("Did you seek advice from anyone regarding tax reporting requirements of Netfinity, Netfinity Assets Corporation?").   As reflected in the transcript, the IRS did not seek to specify that it sought information about non-privileged communications.

The IRS may not invade Lui's communications with counsel or federally authorized tax practitioners, or communications governed by the work product doctrine.  *See United States v. Zolin*, 491 U.S. 554, 562 (1989)) (holding, in an IRS summons enforcement action, that the attorney-client privilege is the "oldest and arguably most fundamental of the common law privileges" recognized under the Federal Rules of Evidence); *see also* 26 U.S.C. § 7525 (protecting from disclosure confidential communications with respect to tax advice between a "federally authorized tax practitioner" and a client "to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.");[15]  *Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (stating that the work product doctrine preserves a zone of privacy in which a lawyer can prepare and develop legal theories and strategies with an eye toward litigation).

---

[14] In his August 4, 2014 deposition, Lui also asserted the marital communications and adverse spousal testimonial privileges to 2 questions. Lui no longer asserts these privileges.  Lui's wife answered the questions at issue in an IRS recorded interview.

[15] Both attorneys and certified public accountants fall within the definition of "federally authorized tax practitioner" for section 7525.  *See* 26 U.S.C. § 7525(A)(3)(A); 31 CFR §10.3(a)-(b).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

In the event the Court were to rule against Lui on the Fifth Amendment issue (which the Court should not) and order Lui to answer further questions, the order would be an abuse of process if it also required Lui to describe privileged communications with attorneys or federally authorized tax practitioners.   The IRS may not invade Lui's attorney-client privilege, his privilege  with federally authorized tax practitioners, or communications governed by the work product doctrine. *See, e.g,. Countryside Limited Partnership v. Commissioner of Internal Revenue*, 132 T.C. 347 (2009) (holding that communications of tax advice from a federally authorized tax practitioner are privileged under 26 U.S.C. § 7525, and could not be subpoenaed unless the Service could prove an exception to the privilege applies).  *United States v. Sanmina*, No 5:15-cv-00092-PSG. (N.D. Cal., May 20, 2015) (tax advice reviewed by both a taxpayer's certified public accountant and attorney remains privileged under both section 7525 and attorney client privilege).

### E.    Additional Arguments

Lui asserts four additional arguments regarding the government's failure to meet its prima facie case under *Powell*: [16]  (i) the IRS agent's verification of the complaint was inadequate;  (ii) various documents were not relevant to the purpose of the summons; (iii) records potentially suppressed pursuant to 26 U.S.C. § 982(a) cannot be relevant to the IRS tax inquiry and thus are not properly subject to the Document Summons; and (iv) IRS abuse of process and bad faith.[17]

#### 1.    Verification of the Complaint Was Inadequate

Lui asserts that the Order to Show Cause for the Document Summons and Testimonial Summons is invalid because the IRS agent's verification was insufficient.  *See* ECF No. 1, p. 5 (agent's declaration).  The agent's declaration was not based on personal knowledge, and the agent was thus not competent to testify to admissible facts.  *See* Fed. R. Civ. P. 56(c)(4) (stating that an affidavit must be based on personal knowledge);  Fed. R. Civ. P. 81 (stating that Federal Rules of Civil Procedure apply to subpoenas issued by a federal agency except as otherwise provided by

---

[16] Lui withdraws his prior argument that documents related to an entity disregarded for U.S. tax purposes are not relevant and thus are not properly a subject of the Document Summons.

[17] In addition to the Original Memorandum, Lui has filed a Request for Admissions, Request for Documents, and Motion to Dismiss in connections with this Summons action.  *See* ECF No.15, ECF No. 45, and ECF No. 59.  Lui continues to assert those arguments and incorporates those arguments by reference.  Based on the Court's determination at the December 15, 2016 hearing Lui understands that the Court will rule on those issues based on the pleadings.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Amended Memorandum of Points and Authorities in Support of Opposition

statute or other rule).

**2.    Documents Related to WG, Netfinity and Jatur Are Not Relevant**

Lui asserts that the records related to Netfinity, WG, and Jatur are not relevant to the IRS inquiry as required by *United States v. Powell*, 379 U.S. 48, 57 (1964). Specifically, records for Netfinity, WG, and Jatur are not relevant to Lui's tax liabilities because there are no tax liabilities or for Lui (or his wife) since in the case of Netfinity and WG he was not a vested beneficiary of the 2002 Trust, and in the case of Jatur he never held even a nominal interest. *See* ECF No. 23, pp. 1-15 (opinion of William K. Norman stating that there no tax liability could arise from the 2002 Trust); ECF No. 23-1, pp. 1-4. Further, because the 2002 Trust was a foreign trust, Lui had no obligations to file various information reporting forms, including IRS Form 5471. *Id.*

**3.    IRS Section 982 Letter Makes Documents Irrelevant for Document Summons**

Lui asserts that the IRS could not meet its prima facie showing for documents that the IRS could potentially suppress in a subsequent civil proceeding pursuant to 26 U.S.C. § 982(a) (i.e. documents that Lui did not provide the IRS in response to the FDR). Such documents are not properly the subject of a summons because (i) the records are no longer relevant to an IRS audit because the IRS may suppress them; and (ii) the government is estopped from using both remedies - the summons and the section 982 FDR - in a civil tax proceeding.

**4.    Abuse of Process and Bad Faith**

Lui alleges that the IRS acted in bad faith by issuing the Document and Testimonial Summonses. Specifically, Lui alleged that the IRS had misled Lui by informing him that the IRS did not have a copy of a FBAR that he had previously filed. Later, the IRS inadvertently disclosed that it had received the FBAR.

## IV.    CONCLUSION

During the IRS audit, Lui has produced substantial documents that were in his possession or control, taking significant steps to obtain many of them from record holders overseas. It would be an abuse of process to enforce the Document Summons for the Netfinity, WG, or any other additional documents the IRS seeks that are not in Lui's possession or control. With regard to the Testimonial Summons, Lui properly asserted his Fifth Amendment privilege and it would also be an

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

abuse of process for the Court to enforce that summons.  Lui respectfully requests that the Court

deny the government's petition to enforce the two summonses.


Dated:  February 9, 2017                      BAKER & McKENZIE LLP


                                              By: /s/ Scott H. Frewing
                                                  Scott H. Frewing
                                                  Attorney for Respondent
                                                  Lawrence Y. Lui

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400