Scott H. Frewing (SBN 191311)
Robert C. Hammill (SBN 298689)
**Baker & McKenzie LLP**
660 Hansen Way
Palo Alto, CA 94304-1044
Telephone: +1 650 856 2400
Facsimile: +1 650 856 9299
scott.frewing@bakermckenzie.com
robert.hammill@bakermckenzie.com

Attorneys for Respondent
Lawrence Y. Lui

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Petitioner,

v.

LAWRENCE Y. LUI,

Respondent.

Case No. 3:16-cv-00969-JST

**SUR-REPLY TO PETITIONER'S REPLY TO AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT'S OPPOSITION TO PETITION TO ENFORCE IRS SUMMONS**

DATE: March 16, 2017
TIME: 2:00 p.m.
DEPT.: Courtroom 9-19th Floor

## I. INTRODUCTION

On February 23, 2017, the United States filed its Reply to Amended Memorandum of Points and Authorities in Support of Lawrence Y. Lui's Opposition to United States Petition to Enforce the IRS Summonses (the government's "Reply"). ECF No. 84. Respondent submits this sur-reply.

## II. ARGUMENT

### A. Possession and Control is Tested on July 29, 2015, the Service Date for the Summons, and Lui Did Not Control the Netfinity Documents on That Date

In its Reply, the government obfuscates the chronology of events to avoid the plain fact that Lui did not possess or control the Netfinity documents on July 29, 2015, the date the government

1

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No 3:16-cv-00969-JST
Sur-Reply to Petitioner's Reply to Amended Memorandum

concedes is the relevant date for the determination of control. *See* ECF No. 84, p. 5:6-7 (admitting that "[t]he rights and obligations of the summoned party become fixed at the time the summons is served.") (emphasis added); s*ee also Couch v. United States*, 409 U.S. 322, 329 n.9 (1973) (possession tested on the date the summons is served). Lui lost whatever control he had of the Netfinity documents on July 26, 2014, more than a year prior to the July 29, 2015 service date.

Further, the government implies that Lui caused the 2014 loss of control of the Netfinity documents. ECF No. 84, p. 2:25-3:1. However, the record includes evidence showing that Lui's father and siblings, not Lui, removed whatever control Lui may have had over Netfinity:

(i) documents showing that Dr. Lui allocated assets to Lui's siblings; ECF Nos. 83-1, 83-4;

(ii) a July 26, 2014 letter from Lui's siblings directing the distribution of the shares to themselves; ECF No. 83-5;

(iii) Netfinity share registers proving that the transfer of the shares to Lui's siblings, completed more than a year prior to July 29, 2015; ECF No. 83-3; and

(iv) declarations of two Netfinity directors that Lui did not control Netfinity documents and never had signature authority over a Netfinity bank account; ECF Nos. 83-7, 83-8.

Without citing any evidence, the Reply also wrongly implies that the change of control on July 26, 2014 was done in bad faith to deny documents to the U.S. government.[1] *See generally* ECF No. 84, pp. 2:14-5:4. The only indication of Dr. Lui's motive in allocating the trust assets to Lui's siblings is that it was the occasion of his 85th birthday. ECF No. 83-9 ¶9. There is no evidence of the siblings' motives. The siblings merely exercised legal rights to take control of non-U.S. assets. Each is a non-U.S. person, resident in Hong Kong, who lawfully took control of non-U.S. assets. The siblings' reasons -- for which there is no evidence in the record -- are not relevant to Lui's lack of control more than one year later on July 29, 2015.

**B. Lui Has Satisfied His Burden of a Plausible Inference Regarding His Lack of Possession and Control on July 29, 2015, and the Government Has Never Offered Contrary Evidence**

In its Reply the government argues that "taxpayer has failed to produce credible evidence of

[1] Lui has not hidden who holds the documents. The IRS is able to have the Hong Kong government obtain records pursuant to the Agreement Between the Government of the United States and the Government of Hong Kong For the Exchange of Information Relating to Taxes, effective July 2014.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

non-possession" and wrongly states that Lui only "relies on conclusory opinion letters from attorneys." ECF No. 84, p. 7:12-14. In his Amended Memorandum, Lui highlighted 16 documents demonstrating Lui's lack of possession or control, *eleven of which are not legal opinions*. *See* ECF Nos. 83-1, 83-2, 83-3, 83-4, 83-5, 83-6, 83-7, 83-8, 83-9, 83-10, 83-11 (documents showing the trust, Lui's siblings control of the documents on July 29, 2015, and Lui's attempts to obtain them).

The government's objection to Lui's submission of legal opinions also contradicts courts that have held that a reasonable showing of lack of control in foreign jurisdictions *necessitates* legal opinions. *See United States v. Hayes*, 722 F.2d 723, 726 (11th Cir. 1984) (holding that taxpayers must evaluate legal avenues to obtain the relevant documents). *See also Universe Sales Co., Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999) (judgment cannot be entered for party that failed to rebut foreign law).

In fact, it is the government that has failed to offer evidence. As an example, the government's cite to *Malhas*[2] highlights the lack of government evidence in this matter. In *Malhas*, unlike here, the government submitted significant evidence to rebut taxpayer's assertion of non-possession. *Id*. at 3. (citing government Exhibits A through M). The court described the documents submitted by the government as the "IRS's plethora of documents and records illustrating Malhas's connections with the international banks and the accounts at issue" and the taxpayer's evidence as "cursory references to the signatory and asset-transfer documents." *Id*. at 12. The record here is directly opposite *Malhas* - Lui has submitted the plethora, not the government.

To try to make up for having not included in its original Petition any specific factual allegations regarding Lui's control of the Netfinity documents *on July 29, 2015*, the government now cites a 2005 SEC submission.[3] *See* ECF No. 84, pp. 1-2.

First, the 2005 SEC submission says nothing about Lui's control on July 29, 2015. At best, the 2005 SEC submission is a statement made by Galaxy in 2005, ten years prior to July 29, 2015.

Second, the 2005 SEC submission says nothing about Lui's *beneficial* ownership of Netfinity shares at any time. It merely reflects that Galaxy established its exemption from registration under

---

[2] 2015 U.S. Dist. LEXIS 151990, *11 (N.D. Ill 2015).
[3] The government originally sought to introduce the 2005 SEC submission in its original Reply, not with its original Petition. The Court should find that the government waived this argument. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[a]rguments not raised by a party in its opening brief are deemed waived."). Regardless, the 2005 SEC submission proves nothing.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

the applicable version of SEC Rule 12g3-2(b)[4] using its home jurisdiction materials.[5] In other words, the 2005 SEC submission contained documents and information Galaxy had made publicly available pursuant to Hong Kong listing rules.[6] As reflected in the Baker & McKenzie opinion, in Hong Kong it is permissible, and even common, for a registered owner to act in an undisclosed fiduciary capacity and such filings are not evidence of beneficial ownership. ECF No. 83-15.

**C. The Government Wrongly Suggests Galaxy Paid a Dividend to Lui**

In its Reply, the government implies that Galaxy paid Lui a dividend, and that it was this possibility that motivated and justified the IRS expanding its audit of Lui. ECF No. 84, p. 2:12-14. The record shows, however, that Galaxy did not pay any dividends from the date of its acquisition in July 2005[7] to July 26, 2014, when Dr. Lui and Lui's siblings removed any control of Netfinity from Lui. *See* ECF No. 24-2, pp. 81-82 (demonstrating no dividend paid by Galaxy from July 2005 through July 26, 2014, which includes the entire IRS audit period through December 2012). As a result, for more than nine years Lui could not have had any income from a Galaxy dividend, even if Lui had been the beneficial owner of the Netfinity shares, which he was not.

**D. Lui Has Not Waived His Fifth Amendment Privilege**

The government incorrectly asserts that Lui waived his Fifth Amendment privilege regarding Netfinity because of his statement (ECF No. 21-3) that the documents are in the control of his siblings. ECF No. 84, p. 8:14-23. This argument contradicts logic and well-settled case law.

First, waiver cannot be lightly inferred. *See Smith v. United States*, 337 U.S. 137, 150 (1949). For a party to waive the Fifth Amendment, he must have reason to believe that his statements are both "testimonial" and "incriminating." *See Klein v. Harris*, 667 F.2d 274, 288 (2d

---

4 Galaxy made the submission pursuant to a version of 17 C.F.R. § 240.12g(3)(2) prior to amendments on October 10, 2008. Galaxy was not required to disclose beneficial ownership.

5 Galaxy maintained its primary listing and trading market in Hong Kong. Rule 12g3-2(b) "require[d] the issuer to provide the [SEC] with information that it has: 1) [m]ade or is required to make public pursuant to the law of the country of its domicile or in which it is incorporated or organized; (2) filed or is required to file with a stock exchange on which its securities are traded and that was made public by such exchange; and/or (3) distributed or is required to distribute to its security holders." 17 C.F.R. § 240.12g(3)(2) (1967); *see also* SEC Release Nos. 34-8066 (Apr. 28, 1967) and 34-58645 (Sept. 25, 2008). Galaxy's ADRs could be traded in the United States as long as Galaxy applied for and complied with the terms of Rule 12g3-2(b).

6 As a result, no inference can be drawn that the reported ownership of the Netfinity shares was made in accordance with U.S. disclosure standards.

7 The 2005 SEC submission shows the acquisition was in July 2005. ECF No. 33-1, p. 1-2.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Cir. 1971). "Testimonial" means "voluntarily made under oath in the context of the same judicial proceeding," which would apply here. *Id*. "Incriminating," however, means something more than matters that are "collateral" to the circumstances and must directly inculpate the person in the commission of the (alleged) crime. *Id*. Here, Lui has merely stated that requested documents are in the control of his siblings as of July 26, 2014, a fact that in no way incriminates him with regard to the actions the IRS may assert are criminal, such as allegedly willfully not filing certain forms.

Second, offering evidence to challenge an IRS summons on the basis of non-possession or control does not mean forfeiting Fifth Amendment protections. *See United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (recipients of summonses bear the burden of offering credible evidence of non-possession); *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (upholding Fifth Amendment privilege in a summons action, after the taxpayer submitted declarations regarding non-possession and attempts to comply with document requests); s*ee also Emspak v. United States*, 349 U.S. 190, 196 (1955) (courts should indulge every reasonable presumption against finding a waiver). The government's position contradicts *Bright*, and would force a taxpayer to choose between (i) preserving his Fifth Amendment rights or (ii) presenting evidence of non-possession.[8]

The government further asserts that Lui's Fifth Amendment claims for questions relating to Netfinity "are suspect" because "he now alleges that he was never the beneficial owner." ECF No. 84, pp. 8:28-9:2. The government reasons that if Lui did not own the stock, then he should have no legitimate fear of prosecution. ECF No. 84, p. 9:2-3.

The government's position ignores that even though Lui was not the beneficial owner of Netfinity, that fact does not resolve whether the IRS questions could lead to incriminating evidence the IRS might use to prosecute Lui. The IRS has consistently declined to acknowledge that the 2002 Trust existed, and it denied that Lui timely filed a 2012 FBAR. Further, the IRS appears to believe that Lui either had income tax or information reporting obligations because of his record ownership of Netfinity shares. The government has not, for example, said that it will not try to prosecute Lui for alleged failures to file IRS Form 5471 relating to ownership of foreign corporations, Foreign

[8] If Lui had waived his Fifth Amendment privilege, which he did not, it would be only to the matters he himself put into dispute (i.e. only his statements in ECF No. 21-3). *Brown v. United States*, 356 U.S. 148, 155 (1958); *accord Mitchell v. United States*, 526 U.S. 314, 321 (1999).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Bank Account Reporting Forms ("FBARs"), or other IRS filing obligations subject to criminal enforcement.[9] As the Ninth Circuit has held, it is enough if potential responses to government questions would merely "provide a lead or clue" to evidence having a tendency to incriminate. *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980).[10]

### E. The Government Cannot Now Offer The Declaration of Revenue Agent Lee To Correct Omissions In Its Original Petition to Enforce

The government tacitly acknowledges that the Petition was not verified and impermissibly seeks to correct infirmities in its original Petition by submitting the February 22, 2017 declaration of Revenue Agent Esther Lee ("Lee Declaration" - ECF No. 84-1). Paragraph 3 of the Lee Declaration is an obvious attempt to remedy that the agent's original declaration (ECF No. 1, p. 5) was not based on personal knowledge, and for which she was not competent to testify to admissible facts.[11] Paragraph 3 of the Lee Declaration is also based on improper hearsay.[12] In addition, the government cannot belatedly cure the failures in its prima facie case, and the court should strike the Lee Declaration. *See Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D. Cal. 1999) ("It is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper.").

## III. CONCLUSION

Lui respectfully requests that the Court deny the government's petition.

Dated: March 2, 2017

BAKER & MCKENZIE LLP

By: /s/ Scott Frewing
Scott H. Frewing
Attorney for Respondent
Lawrence Y. Lui

---

[9] Relevant potential criminal statutes include but are not limited to 26 U.S.C. §§ 7201 (attempt to evade or defeat tax), 7203 (failure to file a return), and 31 U.S.C. § 5322 (FBAR criminal penalties).

[10] The government request that Lui be compelled to answer IRS questions *in camera* is improper. The Supreme Court has said explicitly that a district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983). Compelling testimony, even *in camera*, would undermine the very Fifth Amendment rights at issue.

[11] Previously described in Lui's Motion to Dismiss and Reply (ECF No. 59, ECF No. 62).

[12] *See* Fed. R. Civ. P. 56(c)(4) (affidavit must be based on personal knowledge); Fed. R. Civ. P. 81 (Fed. R. of Civ. P. apply to federal subpoenas). S*ee also Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations without personal knowledge entitled to no weight); *Taylor v. List*, 880 F.2d 1040, 1044 n. 2, 1045 n. 3 (9th Cir. 1989) (requiring personal knowledge, not hearsay).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400