UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br>  v.<br>LAWRENCE Y. LUI,<br>   Defendant. | Case No. 16-cv-00969-JST<br><br>**ORDER GRANTING SUMMONSES IN PART, GRANTING MOTION TO QUASH AND DENYING MOTION TO DISMISS DOCUMENT SUMMONS**<br><br>Re: ECF Nos. 32, 45, 59, 82 |

Before the Court is the United States' Verified Petition to Enforce Internal Revenue Service Summons ("the Petition") against Respondent Lawrence Lui. ECF No. 1. The Court will grant the petition in part and deny it in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Petition arises from an Internal Revenue Service ("IRS") investigation into the tax liabilities of Lawrence Y. Lui ("Lui") and Gorretti L. Lui for the years of 2005 to 2012. ECF No. 1 at ¶ 3. On July 8, 2014, Revenue Agent Meiling Yang, a former Revenue Agent, served Petitioner with a summons related to the alleged tax liabilities. Id. ¶ 7. Agent Yang interviewed Lui pursuant to the summons on August 4, 2014. Id. ¶¶ 9-10. Lui refused to provide testimony, citing his Fifth Amendment privilege against self-incrimination, as well as other privileges. Id. ¶ 10. On July 29, 2015, Agent Lee served Lui with another summons for documents related to the alleged tax liabilities. Id. ¶ 11. The Government sought to compel the production of documents related to Wealth Grand Limited, a Hong Kong company ("WG"), Netfinity Assets Corporation, a British Virgin Islands company ("Netfinity"), and Jatur Sdn. Bhd., a Malaysian company ("Jatur"). ECF No. 1-3 at 7.

Agent Lee interviewed Lui pursuant to the second summons on August 28, 2015. ECF No. 1 at ¶ 14. Lui provided some responsive documents, but failed to provide all responsive

documents or to provide testimony. Id.

Seeking a court order compelling Lui's cooperation with the summons, the Government filed the instant Petition on behalf of the IRS on February 26, 2016. ECF No. 1. On March 15, 2016, this Court found that the Government had established a prima facie case and ordered Lui to show cause as to why he should not be compelled to produce the requested documents and testimony. ECF No. 6. The parties subsequently submitted briefing. ECF Nos. 21-1, 33, 43, 47.[1] The Government also moved to quash Lui's requests for admissions and documents. ECF Nos. 32, 38, 45, 51, 61. Lui moved to dismiss the record summons portion of the Government's complaint. ECF Nos. 59, 61, 62. The Court held a hearing on the order to show cause, as well as the other motions as they relate to the substance of the order to show cause on December 15, 2016. The Court ultimately ordered re-briefing on the order to show cause. ECF No. 73. Lui retained new counsel, ECF Nos. 75, 80, and submitted an Amended Memorandum of Points and Authorities opposing the Governments' summonses. ECF No. 82. The Government filed a new reply. ECF No. 84. Lui filed a sur-reply. ECF No. 88. The Court now considers all of the motions.

## II. LEGAL STANDARD

The IRS has authority to examine books and witnesses pursuant to a summons under 26 U.S.C. § 7602(a). "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data." 26 U.S.C. § 7604.

The specific legal procedure governing the court's inquiry is well-established. See United States v. Powell, 379 U.S. 48 (1964); United States v. Clarke, 134 S. Ct. 2361 (2014). First, the United States must outline its prima facie case. See Crystal v. United States, 172 F.3d 1141 (9th

---

[1] Lui originally moved to strike the Government's reply to his sur-reply on the grounds that it was untimely filed, and the Government responded. ECF Nos. 52, 55, 57. Lui then withdrew his motion to strike. ECF Nos. 89, 90.

2

Cir. 1999). To do so, the United States must show that "(1) the investigation will be conducted for a legitimate purpose; (2) the material being sought is relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the IRS complied with all the administrative steps required by the Internal Revenue Code." Id. at 1143-44 (citing Powell, 379 U.S. at 57-58). "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the Powell requirements have been met." United States v. Dynavac, Inc., 6 F.3d 11407, 1414 (9th Cir. 1993). "The burden is minimal because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." Crystal, 172 F.3d at 1144 (internal quotation omitted).

Once the Government meets its initial burden, the burden shifts to the respondent. Id. "[T]hose opposing enforcement of a summons . . . bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the [IRS] . . . . [T]his burden is a heavy one." Id. at 1144 (internal quotation omitted). Established grounds for challenging the summons include demonstrating "failure to satisfy the Powell requirements." United States v. Jose, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc). Abuse of process, such as bad faith use of the procedure to harass or pressure the taxpayer regarding other disputes, is also recognized as grounds to invalidate the summons. Powell, 379 U.S. at 58. The Government also may not seek enforcement of a summons when it has already decided to recommend the matter for prosecution. See United States v. LaSalle National Bank, 437 U.S. 298, 314 (1978). "[T]he dispositive question in each case is whether the Service is pursuing the authorized purposes in good faith." Crystal, 172 F.3d at 1144-45 (internal quotation omitted).

## III. DISCUSSION

This Court previously found that the Government had established a prima facie case under Powell based upon its initial Petition and accompanying Declaration. ECF No. 6 at 1. The Government demonstrated through Agent Lee's declarations and the supporting documents that the investigation's purpose is to seek Lui's testimony and records regarding tax liabilities. ECF No. 1 at ¶ 3. The declarations of Agent Lee and the supporting documents establish that the material sought is relevant to the investigation's purpose. ECF No. 1 at ¶¶ 3, 4, 6, 8, 12. The

1  declarations assert that the IRS does not presently possess the records sought. Id. at ¶ 6. The

2  Government contends there has been no referral to the Department of Justice for criminal

3  prosecution of the matters described in the summons. Id. at ¶ 17. Finally, the Government asserts

4  that it has complied with all administrative steps required, including proper notice and summons.

5  Id. at ¶ 16.

Because the Government has carried its initial burden and established a prima facie case, the burden shifts to Lui to rebut the Government's assertions. Crystal, 172 F.3d at 1144.

### A. Lack of Possession as a Defense to Document Summons

The IRS seeks documents related to Lui's interest in foreign entities and bank accounts. ECF No. 84 at 5. The IRS summons is broad in scope. It seeks various agreements, certificates, articles for establishing the entity, by-laws, letters, documents identifying various positions and organizational structures, invoices, bank documents, contracts and other important documents. ECF No. 1-3. Lui argues that he does not possess, control, or have custody of any of these documents. ECF No. 82, 88. The Government contends that Lui had an obligation to retain such documents and has not provided credible evidence as to why they are not – or no longer – in his possession. ECF No. 84.

Pursuant to 26 U.S.C. § 982(c)(1), the IRS may issue a foreign document request ("FDR") to any taxpayer to request foreign-based documentation. "Foreign-based documentation" is "any documentation which is outside the United States and which may be relevant or material to the tax treatment of the examined item." 26 U.S.C. § 982(d). "Congress enacted Section 982 as a pretrial discovery tool 'to discourage taxpayers from delaying or refusing disclosure of certain foreign-based information to the IRS.'" Matter of Int'l Mktg., Ltd. v. United States, No. C-901839-SAW, 1990 WL 138528, at *1 (N.D. Cal. Aug. 20, 1990) (citations omitted). Enforcement of a FDR is subject to the same standards as an administrative summons under Powell. See Larue v. United States, No. 3:15-cv-00705-HZ, 2015 WL 9809798, at *2 (D. Or. Dec. 22, 2015).

"An IRS summons imposes a duty to retain possession of summoned documents pending a judicial determination of the enforceability of the summons." United States v. Asay, 614 F.2d 655, 660 (9th Cir. 1980). A party's obligations become fixed when the summons is served. See

Couch v. United States, 409 U.S. 322, 329 n. 9, 93 S. Ct. 611, 616 (1973) (citing United States v. Zakutansky, 401 F.2d 68, 72 (7th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628; United States v. Lyons, 442 F.2d 1144 (1st Cir. 1971)); see also United States v. Darwin Const. Co., Inc., 873 F.2d 750, 755 (4th Cir. 1989) ("When an IRS summons is served, the rights and obligations of the party on whom the summons is served become fixed."). The party resisting enforcement bears the burden of producing credible evidence that he does not possess or control the documents sought.[2] See United States v. Huckaby, 776 F.2d 564, 567-8 (5th Cir. 1985); United States v. Billie, 611 Fed. Appx. 608, 610 (11th Cir. 2015).

It is Lui's burden to establish any affirmative defense. See United States v. Seetapun, 750 F.2d 601, 604 (7th Cir. 1984) (citing United States v. Kis, 658 F.2d 526, 542 (7th Cir. 1981). Lack of custody or control is one such defense to enforcement of the document summons. United States v. Bright, 596 F.3d 683, 695 (9th Cir. 2010); see also United States v. Rylander, 460 U.S. 752, 757 (1983) (holding that one "appropriate ground" to challenge an IRS summon is the "lack of possession or control of records"). It is unclear exactly

> what a taxpayer must show to meet his or her burden of demonstrating a lack of possession, custody, or control of the requested documents. However, the taxpayer's "responsibilities surely go further than a *pro forma* demand and cursory search for records," or a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence."

Larue, 2015 WL 9809798, at *3 (quoting Seetapun, 750 F.2d at 605; FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997)). A taxpayer may face contempt sanctions if he cannot produce credible evidence that the documents requested were outside his or her possession or control at the time of the summons. Asay, 614 F.2d at 660.

Some Circuit Courts of Appeals "have held that it is within the district court's discretion to simply determine whether the facts show that the taxpayer does, or does not, possess the relevant

---

[2]Lui has submitted a motion to dismiss in which he argues that the Government must establish that the requested documents exist in order to defend its summons. ECF No. 59 at 1. The Court agrees with those courts that have held it is the summonee's burden to establish non-possession through the presentation of credible evidence. See United States v. Lawn Builders of New England, Inc., 856 F.2d 388, 392 (1st Cir. 1988) ("We have previously rejected the contention that the IRS must *prove by positive evidence* the existence of the records and their possession by the summonee.") (emphasis in original) (citing cases).

5

documents." See United States v. Malhas, No. 15-CV-3932, 2015 WL 6955496, at *4 (N.D. Ill. Nov. 10, 2015) (citing cases). Others have required the party resisting enforcement bear the burden of producing credible evidence of non-possession, operating on a "sliding scale." Id. The Government has suggested that the Court consider the evidence based on this "sliding scale: the more the Government's evidence suggests the defendant possesses the documents at issue, the heavier the defendant's burden to successfully demonstrate that he does not." Malhas, 2015 WL 6955496, at *4. In Malhas, the taxpayer "failed to satisfy his burden regardless of what standard the Court applie[d]." Id. Malhas provided no credible evidence and relied only on his own affidavits and testimony. Id. at *1-2. Meanwhile, the IRS presented a "plethora of documents and records illustrating Malhas' connections with the international banks and the accounts at issue [which] overshadowed Malhas' cursory references to the signatory and asset-transfer documents." Id. at *4. The court held that Malhas failed to overcome his heavy burden because he lacked evidence in comparison to the evidence provided by the government.

The Court adopts the sliding scale test from Malhas, but reaches a different result, because the facts here are markedly different than in Malhas. For one thing, Lui presents far more than his own affidavit to support his argument of non-possession. ECF No. 82 at 21-24. Lui argues he does not have possession of the requested documents because the non-produced records were either beyond his control or no longer existed as of July 29, 2015, the date of the IRS document summons. ECF No. 82 at 14-17, 21-24. On July 26, 2014, Lui resigned as a director of Netfinity and any related records were transferred out of his possession, custody, care and control to the custody of his siblings. ECF No. 82 at 15, citing ECF No. 24-2 at 154; ECF No. 24-6 at 63-71. Lui argues that "[c]oncurrently," the 2002 Trust assets were distributed among Lui's siblings, and "all shares in Netfinity and WG were transferred to Lui's" siblings." Id. Lui contends that "[u]pon distribution of the assets, the 2002 Trust dissolved because it no longer held any assets." ECF No. 82 at 15 (citing ECF No. 23 at 7). Lui presents numerous exhibits that show Lui had limited power over the trust that held Netfinity shares, ECF No. 24-2 at 17-18, 12, 73, 77, 75, 79; ECF No. 22-2 at 3-7; that the interests in Netfinity and WG were transferred to Lui's siblings at their request, ECF No. 24-2 at 38-41, 19, 35, 105,107-112; that the documents sought are now in

the possession of Lui's siblings, ECF No. 24-2 at 63-71, 154; ECF No. 22-2 at 3-7; and that Lui was never a beneficial owner, ECF No. 24-2 at 14-16. Moreover, Lui has attached advisory letters from law firms within the foreign jurisdictions, explaining that non-beneficial owners have no legal right to compel production of the documents. ECF No. 21-5 at 3-7. Therefore, Lui argues, he has no enforceable legal right to obtain the records. ECF No. 82 at 15. Lastly, Lui presents evidence that he did not receive a dividend from Galaxy during the audit period, ECF No. 24-2 at 81-82, and asserts he is not the beneficial owner of the Netfinity shares, ECF No. 88 at 4.

The Government offers little direct evidence to the contrary.[3] It primarily relies on a 2005 SEC filing that lists Lui as the owner of Netfinity. ECF No. 33-1. In addition, the Government also asks the Court to consider the suspicious timing of events by which the shares of Netfinity were distributed out of Lui's control and to his siblings, ECF No. 84 at 10, as well as Lui's lack of documentation surrounding the transfer of the Netfinity stock to his siblings. Id. at 8.

These circumstances, though suspicious, are insufficient to demonstrate that Lui possesses or has the capacity to obtain the challenged documents. Although Lui may have been on notice of the IRS' investigation into his foreign assets because of the FDR or the testimonial summons in 2014, Lui's duty to retain these documents was not fixed until July 29, 2015, the date of the document summons.[4] The Court finds that the suspicious timing alone is not enough to overcome the plethora of evidence that Lui has offered to show that he did not possess, control, or have custody of the documents at issue which the IRS sought in its July 29, 2015 document summons as of that date. The Court cannot compel Lui to produce documents that he does not have in his possession or control.

Nonetheless, although Lui has succeeded in demonstrating that he does not possess

---

[3] Compare Larue, 2015 WL 9809798, at *3 (relying on IRS' declaration, based on information obtained, that taxpayers "facilitate[d] a scheme whereby [they] set up offshore trusts to improperly avoid U.S. income tax" and petitioners "fail[ed] to present any evidence" that they did "not possess or control the documents at issue" or that they "made any efforts to retrieve the summoned documents from any party.").

[4] The Government argues the relevant summons date was July 8, 2014 because it placed Lui "on notice that the IRS was examining his foreign interests." ECF No. 84 at 8. The obligation to retain documents does not begin until the actual document summons is issued. See Asay, 614 F.2d 660.

7

United States District Court
Northern District of California

documents directly related to the Netfinity or WG assets, he has not met his burden of showing that he has no documents related to the transfer of those assets. As the Government argues, "[i]t is difficult to believe that such a significant purchase and transfer of stock would be unaccompanied by correspondence or at least emails maintained by the transferor." ECF No. 84 at 8. In the IRS' initial summons, it included "letters of wishes, letters of intent, orders of instructions and other similar documents expressing the founder's or beneficiary's wishes or instructions regarding the entity." ECF No. 1-3 at 7. Lui has not included any emails or other correspondence with regard to the transfer of the Netfinity stock. He has, however, been able to provide declarations from his siblings corroborating the fact that he no longer has access to Netfinity documents. ECF No. 83-1, 83-2, 83-3, 83-4, 83-5, 83-6, 83-7, 83-8, 83-9, 83-10, 83-11. Therefore, Lui is ordered to turn over any additional correspondence or other records in his possession regarding the transfers, or to submit a declaration under penalty of perjury that no such documents exist and that none existed as of July 29, 2015. Such declaration must be filed by August 11, 2017.

**B.      Defenses to Testimonial Summons**

**1.      5th Amendment**

The Government also challenges Lui's assertion of the Fifth Amendment at his summons interview. A taxpayer may invoke his Fifth Amendment rights in response to an IRS summons when there are "substantial hazards of self-incrimination that are real and appreciable." United States v. Drollinger, 80 F.3d 389, 392 (9th Cir. 1996) (internal quotation omitted). "The defendant must have 'reasonable cause to apprehend [such] danger from a direct answer' to questions posed to him." Id. (quoting United States v. Neff, 615 F.2d 1235, 1239 (9th Cir. 1980)). A taxpayer may invoke the Fifth Amendment when his testimony carries a risk of incrimination and "the penalty he suffered amounted to compulsion." United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005). The taxpayer may not, however, "convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." US v. Rylander, 460 U.S. 752, 755 (1983). Mere "blanket assertion[s]" of Fifth Amendment rights are insufficient. United States v. Brown, 918 F.2d 82, 84 (9th Cir.

8

1990).

"In determining whether a real and appreciable danger of incrimination exists, the trial court must examine 'the questions, their setting, and the peculiarities of the case.'" Drollinger, 80 F.3d at 392 (quoting Neff, 615 F.2d at 1240). The process requires a question-by-question or document-by-document review. United States v. Bodwell, 66 F.3d 1000, 1001 (9th Cir. 1995).

Here, Lui asserted his Fifth Amendment privilege to almost every question asked of him during his testimony, including "[Did] you take any accounting classes in college?," "Did you take any accounting or tax classes in graduate school?," and "Do you have any education in accounting or tax matters?" ECF No. 11-1 at 41. Answers such as these make it difficult for the Court to conclude that Lui asserted the Fifth Amendment on a question-by-question basis, as the law requires.

Accordingly, because it appeared likely that Lui's assertion of Fifth Amendment privilege was overbroad and that he should be required to answer at least some additional questions, the Court asked the parties to submit further briefing regarding follow-up questions the Government was entitled to ask. See ECF No. 94. The Court now rules as follows on the parties' disputes.

### a. General Background Questions

By stipulation of the parties, Lui is ordered to answer the general background questions identified in the parties' joint brief. Id. at 3.

### b. Questions Related to Lui's FBAR Obligations and Compliance

The parties dispute whether Lui should answer questions pertaining to his foreign financial accounts, foreign financial account reporting obligations, and his personal knowledge of FBAR and other requirements. Lui properly invoked his rights under the Fifth Amendment to these questions, as he faces a real and substantial risk of criminal incrimination and did not open himself to these questions by the scope of his declaration. See In re Master Key Litig., 507 F.2d 292, 293 (9th Cir. 1974). The Court likewise will not compel any follow-up questions about Lui's interests held in foreign accounts. See ECF No. 94 at 21, 24-25.

/ / /

/ / /

### c. Questions Related to Lui's Ownership and Reporting of Foreign Entities, Including Galaxy Entertainment Group Limited and Netfinity Assets Corporation

Similarly, the Court finds Lui did not waive his right to invoke the privilege regarding questions 1-19 and 21-44 related to his ownership and reporting of foreign entities. ECF No. 94 at 26-28. The Court finds, however, that Lui waived his Fifth Amendment the privilege with respect to question 20, "Who keeps the books and records of Netfinity Asset Corporation?" as this topic was included in his declaration. See ECF No. 21-3 ¶ 9. The Government may ask Question 20.

### d. Lui's June 2016 Declaration

In addition to the testimony identified above, Lui also submitted a declaration to the Court on June 21, 2016. ECF No. 21-3. The declaration sets forth facts related to his siblings' acquisition of the books and records of Netfinity and WG, his attempts to obtain copies of those records, and his retention of the law firms of Baker & McKenzie and Maples & Calder to provide legal opinions concerning his rights and obligations concerning the Netfinity/WG records. The Government seeks to ask Lui questions regarding this declaration; Lui opposes this request.

Paragraph 6 of Lui's declaration provides that "[a]fter diligent search and efforts, I have produced all of the records requested in the record summons that were in my possession, custody, care or control." ECF No. 21-3 ¶ 6. Paragraph 9 states that "[s]ince July 26, 2014 all the records of Netfinity and WG have been in possession, custody, care and control of [Lui's] siblings." Id. ¶ 9. Because the statements made in these two paragraphs are not incriminating, Lui may be questioned or "cross-examined" about his lack of possession or control of the summonsed documents as of the date of the Document Summons. The Government may therefore ask Lui the following questions:

(1) Did you possess any summonsed documents as of July 29, 2015 (the service date for the Document Summons)?

(2) Who possessed the Netfinity documents on July 29, 2015?

(3) Where do the individuals that possessed the documents on July 29, 2015 reside?

(4) How did you know that your siblings possessed or controlled the documents on July 29, 2015?

(5) What documents do you possess that evidence your siblings' possession or control of the Netfinity documents?

In Paragraph 10 of his Declaration in support of his opposition to the summons, Lui sets out "an additional demonstration of good faith to try to comply with the record summons." ECF No. 21-3 ¶ 10. He elaborates on his 2015 and 2016 efforts to obtain requested documents after receipt of the July 29, 2015 Document Summons. Lui "did not make any statements about the establishment of a trust in 2002, the establishment of Netfinity, the receipt of funds by Netfinity used to acquire Galaxy shares, Lui's role as a trustee prior to 2015, other foreign entities or accounts, [or] the establishment or incorporation of a trust or foreign entity." ECF No. 94 at 7-8. He did, however, "retain[] and obtain[] opinions of counsel in Hong Kong and in the British Virgin Islands" to "show that" he had "no legally enforceable right to obtain the summoned records that have not been produced from the companies," and "no valid legal ground to sue to get them." ECF No. 21-3 ¶ 10. The Court agrees with Lui that "merely referencing documents does not create waiver," ECF No. 94 at 9 (citing Rutherford v. PaloVerde Health Care Dist., 2014 WL 12637901 (C.D. Cal. Sep. 23, 2014)), and the government does not provide any persuasive authority supporting the contention that the documents Lui provided to these law firms must be produced.

### 2. Other Privileges

At his interview, in addition to his Fifth Amendment privilege, Lui asserted the attorney-client privilege in response to 14 questions, the work product doctrine in response to six questions, and the tax practitioner privilege in response to 15 questions.[5] ECF No. 82 at 33. It is not necessary for the Court to rule on these objections, however, because the Court has upheld his assertion of the Fifth Amendment privilege as to the same questions.

### C. Challenges to Government's Prima Facie Case

The Court also rules on separate challenges Lui has made to the Government's summons.

---

[5] Lui asserted the marital communications and adverse spousal testimonial privileges to two questions, but no longer asserts them given that his wife answered the questions at issue in an IRS recorded interview. ECF No. 82 at 33, n. 14.

11

### 1. Verification

Lui argues that the government's initial summons was inadequate because Agent Lee's verification was insufficient. ECF No. 82 at 34. Affidavits must be based on personal knowledge. Fed.R.Civ.P. 56(e). Here, Agent Lee's declaration was based on personal knowledge and belief. ECF No. 1 at 5. After Lui challenged the sufficiency of the verification, the Government provided the Court with Agent Lee's affidavit explaining how she attained her personal knowledge. ECF No. 84-1 at 1-3. Lui contends that the declaration is an inadequate solution because it cannot cleanse the deficiency of the initial summons. ECF No. 88 at 6. Agent Lee, however, has testified that she reviewed Lui's file personally and conducted part of the investigation personally. ECF No. 1 at 5. This is not a circumstance in which the complaining officer "clearly showed that [s]he had no personal knowledge of the matters on which his charge was based." United States v. Greenberg, 320 F.2d 467, 471 (9th Cir. 1963). Therefore, the Government's summons does not fail for lack of verification.

### 2. Relevance

Lui argues that the summoned records of Netfinity, WG, and Jatur are not relevant or material to his tax liabilities. ECF No. 82 at 35. "The relevance standard for an IRS summons is different from, and more relaxed than, admissibility standards under the Federal Rules of Evidence. Summoned material is relevant if it might 'throw light' upon the correctness of the return." Schoop v. Commissioner of Internal Revenue, No. C 13092230 SI, 2013 WL 5487040, at *3 (N.D. Cal. Oct. 2, 2013) (quoting United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984)). "Congress expressly intended for the IRS to obtain materials 'of even *potential* relevance to an ongoing investigation.'" Id. (emphasis in original).

The Government concedes that Lui has complied with the summons as it pertains to Jatur, and therefore Jatur is not at issue here. ECF No. 82 at 19. With regard to Netfinity and WG, however, the Government contends that Lui's alleged beneficial ownership of Galaxy stock (through Netfinity's ownership) is relevant. ECF No. 84 at 5 ("the audit was expanded to determine if taxpayer was required to report dividend income from the $161 Million Galaxy Entertainment Group's stock held under Netfinity Assets Corporation, BVI.") Lui does not

dispute that Netfinity owned 161,066,521 shares of Galaxy stock. Id. Lui, as the 100% owner of Netfinity, was the owner of the Galaxy stock at some point. Id. In order for the IRS to definitively decide whether Luis has any tax obligations as they relate to Netfinity, it requires documents that explain the ownership and management of Netfinity. Id. Lui's transfer of his interest in Netfinity on July 26, 2014, two weeks after the testimony summons and one week before his summons interview, and conflicting information between SEC submissions[6] and Lui's explanation of his role as merely "a trustee," do not adequately establish that he has met his burden of challenging the summoned information as irrelevant. ECF No. 33 at 7-8; ECF No. 21-1 at 21-22. The Court is not persuaded that the IRS will not discover potentially relevant information.

### 3. Abuse of Process and Bad Faith

Lui also includes a three-sentence argument that the IRS' requests are duplicative and made in bad faith or with the intent to prosecute in the future. ECF No. 82 at 35.

"[T]he dispositive question in each case is whether the Service is pursuing the authorized purposes in good faith." United States v. Anderson, Case No. 14-cv-01932-JST, 2014 WL 6682534, at *2 (N.D. Cal., Nov. 25, 2014) (quoting Crystal, 172 F.3d at 1144-45). "Abuse of process, such as bad faith use of the procedure to harass or pressure the taxpayer regarding other disputes, is also recognized as grounds to invalidate the summons." Id. (citing Powell, 379 U.S. at 58). To raise an inference of bad faith on the government's part, "[t]he taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive." United States v. Clarke, 134 S. Ct. 2361, 2367–68 (2014). In light of the Government's broad discretion to request documents related to its legitimate purpose, Lui has failed to carry his burden of demonstrating the summons is not valid. See Crystal, 172 F.3d at 1141.

Moreover, Lui contends that the Government repeatedly asked him questions related to

---

[6] Lui argues in his sur-reply that the SEC submission was first introduced by the Government's original reply, rather than its original Petition. ECF No. 88 at 3, n 3. Lui cites Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) to support the assertion that this argument is waived. Id. However, Lui was already aware of the SEC submission as he submitted part of it as an exhibit in his own Opposition, ECF No. 27, Ex. 24-2, at 83-85. He also submitted a sur-reply giving him the opportunity to respond to the Government's argument on the merits.

filing requirements so it could criminally prosecute or intimidate him. ECF No. 82 at 35. But "[n]aked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge." United States v. Clarke, 134 S.Ct. at 2367. Lui offers no credible evidence that supports this contention, and the Government stated in its petition that it has not referred any matter to the Department of Justice for prosecution. ECF No. 1 ¶ 17. Lui has not presented evidence that the IRS's statement that it did not have a copy of a previously filed FBAR was intended to mislead Lui or was made in bad faith.

## IV. GOVERNMENT'S MOTION TO QUASH

The Government moves to quash the request for admissions filed by Lui pursuant to Rule 36 of the Federal Rules of Civil Procedure and the request for production of documents filed by Lui pursuant to Rule 34 of the Federal Rules of Civil Procedure. ECF Nos. 15, 32, 45. The Court will grant the Government's motions.

"As a general rule, discovery is available in summons enforcement proceedings only in extraordinary situations." United States v. Southern Tanks, Inc., 619 F.2d 54, 56 (10th Cir. 1980) (citing United States v. Fensterwald, 553 F.2d 231 (D.C. Cir. 1977); United States v. Wright Motor Co., 536 F.2d 1090 (5th Cir. 1976)). Occasionally, limited discovery is allowed "in order to examine an agency's institutional posture with respect to possible criminal proceedings." Id. Discovery is "the exception rather than the rule," and whether to permit such discovery is within the Court's "great discretion." Chen Chi Wang v. United States, 757 F.2d 1000, 1004-05 (9th Cir. 1985).

To merit discovery, Lui must make "a substantial preliminary showing that enforcement of the summons would result in an abuse of the court's process" and that "discovery would likely lead to useful, relevant evidence." Roberts v. United States, 364 F.3d 988, 999-1000 (8th Cir. 2004). "The party resisting enforcement" must "do more than allege an improper purpose before discovery is granted." United States v. Church of Scientology of California, 520 F.2d 818, 824 (9th Cir. 1975). "Conclusory allegations carefully tailored to the language of Powell . . . that the Service has issued a summons for an improper purpose such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, are easily made." Id. A taxpayer has a right to

14

conduct an examination of IRS officials, but only "when he points to specific facts or circumstances plausibly raising an inference of bad faith." United States v. Clarke, 134 S. Ct. 2361, 2365 (2014).

Because the Court has determined that Lui failed to successfully rebut the Government's *prima facie* case under Powell, and has raised no credible inference of bad faith, he is not entitled to discovery and the Government's motions to quash are granted.

## V. MOTION TO DISMISS

Lui also filed a motion to dismiss the July 8, 2015 document summons because the IRS failed to provide evidence that the documents sought actually existed. ECF No. 59-1 at 6-7. The Court has already found that the Government satisfied its *prima facie* burden under Powell, and the initial summons need not "prove by positive evidence the existence of the records and their possession by the sumonee." Lawn Builders of New England, 856 F.2d at 392 (1st Cir. 1988). Lui's motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, the Government's petition to enforce the IRS' document summons against Lui is granted for any document or records he has in his possession regarding the transfer of any relevant stock. For all other documents, the petition is denied due to Lui's non-possession. The Government's petition to enforce the IRS' testimonial summons is granted in part. Lui is ordered to appear before Revenue Agent Esther Lee, or any other proper officer or employee of the IRS, at such time and place as may be set by Revenue Agent Lee or her designee, and produce the documents and give the testimony as discussed herein.

IT IS SO ORDERED.

Dated: July 31, 2017

JON S. TIGAR
United States District Judge

15